## FIRST NAT. BANK OF CUSHING v. FUNNELL.

No. 19552. Opinion Filed July 15, 1930.

J. M. Grubbs, for plaintiff in error.

S. J. Berton, for defendant in error.

HERR, C. This is an action by John Funnell against the First National Bank of Cushing to recover the proceeds of an insurance policy then on deposit in said bank. The case was tried on an agreed statement of facts. Therefrom it appears that Jennie Funnell, wife of plaintiff, held a policy in the Oklahoma Aid Association, a mutual benefit association, in the sum of $1,000; that John Funnell was beneficiary thereunder; that Jennie Funnell died on the 18th day of March, 1927; that Charles Foster was the local representative of the association and was cashier of defendant bank. Settlement of the policy was made through him, and upon the receipt of the proceeds thereof he deposited same in defendant bank to the credit of plaintiff and delivered him a duplicate deposit slip therefor and a check book. The bank then advised plaintiff that he might draw checks against said deposit. Plaintiff was, at said time, indebted to said bank in excess of the deposit and defendant

charged this deposit as a credit against the indebtedness and dishonored. checks drawn by plaintiff against the same. The action is to recover the deposit. Plaintiff prevailed in the trial court. Defendant appeals.

It is contended by plaintiff that the fund on deposit was exempt and that the bank could not legally apply the same to the payment of plaintiff's indebtedness to it without his consent. We agree with this contention. Section 10, chap. 32, S. L. 1925, provides:

"The money or other benefit to be paid, provided or rendered by an association authorized to do business under this act, shall not be liable to attachment by trustee, garnishee or other process."

It is argued by defendant that the act only exempts money to be paid; that the exemption does not obtain after payment to the beneficiary and deposit thereof by him in the bank. On this proposition, the authorities are in conflict. The question, however, has been settled in this state adversely to the contention of defendant. In the case of State ex rel. Lankford v. Collins, 70 Okla. 323, 174 Pac. 568, it is held:

"The expression 'to be paid, provided or rendered,' in section 3498, Rev. Laws 1910, exempting from legal process 'the money or other benefit, charity, relief or aid to be paid, provided or rendered,' by fraternal insurance associations, is merely descriptive of the benefits which the statute authorizes such associations and the members thereof to provide; it being contemplated that, the benefits not existing at the time of enactment of the law, they would afterwards be provided for and would inure or accrue in futuro, and the expression, being descriptive of the benefits and not of the exemption, does not limit the exemption to any particular time or to any condition other than as expressed in the section."

The above case was cited with approval by this court in the case of Johnson v. Roberts, 124 Okla. 68, 254 Pac. 88, and First State Bank of Delaware v. Conn et al., 136 Okla. 294, 277 Pac. 928.

Defendant, however, contends that the statute was amended since the rendition of the opinion in the Lankford Case and that the rule therein announced, therefore, no longer applies. The amendment did not materially change the statute in this respect. We adhere to the rule therein announced.

It is contended by defendant that when the money was deposited in the bank it lost its identity; that the deposit was general and not special; that after such deposit, as between it and plaintiff, the relationship of debtor and creditor then existed; and that it had a right, under the law, to apply the deposit to the debt owing it by plaintiff. This contention is answered by this court in the Lankford Case, supra, page 328, by the following quotation from Holmes v. Marshall (Cal.) 79 Pac. 534:

"Appellant contends that, by the deposit of the money in the bank, the money lost its identity, and that thereafter the bank owed Annie J. Jenkins the money; that the debtor thus voluntarily parted with the money, which was exempt, and acquired in lieu thereof a credit due by the bank. Such construction would seem to be unreasonable, and no authority is cited which supports it. It is true that, in one sense, by the deposit the relation of debtor and creditor was created as between the bank and Mrs. Jenkins; but she put the exempt money in the bank. * * * She expected to and did draw it as she needed it. The bank did not give her the identical pieces of money that she deposited, but it gave her, as she drew upon it, money equal in value and kind. She was not required to keep the money buried, or in her stocking, in order to have it remain exempt. If the appellant's theory is correct, she could not have paid a $5 grocery bill with a $20 piece, receiving $15 in change, without the risk of having the $15 attached. The law does not require such absurdity."

It is finally contended by defendant that the money was only exempt from attachment, garnishment, or other process; that it is not attempting to reach the fund by any such process; that it is simply seeking to set-off an indebtedness owing to it by plaintiff against the claim of plaintiff; that it cannot be denied its right to plead its demand against plaintiff as a set-off. We do not agree with this contention. In 25 C. J., at page 128, the following rule is announced:

"According to the weight of authority a set-off cannot be allowed where it would defeat a debtor's exemption rights."

See, also, cases cited in Note No. 64.

In the case of Bradley v. Earle (N. D.) 132 N. W. 660, the following rule is announced:

"Where a plaintiff brings an action for wages due from the defendant, and such wages are exempt to the plaintiff, the defendant cannot counterclaim a debt due from plaintiff to him, although the counterclaim comes within the letter of the statute."

In the body of the opinion, at page 661, 136 N. W., the court says:

"Many courts, under similar enactments,

have given effect to exemption statutes, regardless of the fact that the counterclaim and set-off statutes contain no exceptions or qualifiying words. In Cleveland v. McCanna, 7 N. D. 455, 75 N. W. 908, this court sustained a claim for exemptions, although contrary to the strict letter of the set-off statute, and said: 'It is true that the procedure under our exemption statute refers more particularly to seizures under attachment and executions, but that is because it is by means of those writs that property is usually seized. But it would be an exceedingly narrow view of the law that would deny exemptions where it was sought to take property by other means. This court is unqualifiedly committed to a liberal construction of exemption statutes.'

"In Collier v. Murphy, 90 Tenn. 300, 16 S. W. 465, an action for wages, where the defendant purchased a judgment against the plaintiff and pleaded it as a set-off against the plaintiff's claim, the court said: 'While the language used in the act of 1871 (Milliken & V. Code, 2931), strictly construed, would protect such wages only from "execution, attachment or garnishment," yet the whole spirit of the act is such that we think this claim was not subject to any manner of legal seizure. * * * To subject this claim for wages to a set-off of the kind here offered was to subject exempted wages to a species of legal seizure not admissible'."

To the same effect is the case of Treat v. Wilson (Kan.) 70 Pac. 893.

The judgment of the trial court is correct, and should be affirmed.

DIFFENDAFFER, EAGLETON, HALL, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.