DAUGHERTY, APPELLEE, *v.* CENTRAL TRUST COMPANY OF
NORTHEASTERN OHIO, N.A., APPELLANT.

[Cite as Daugherty *v.* Central Trust Co. (1986), 28 Ohio St. 3d 441.]

(No. 86-180—Decided December 30, 1986.)

"* * *

*Thomas G. Bedall,* for appellee.

*David T. Tarr,* for appellant.

*Per Curiam.* We are asked to resolve two important questions. The first is whether personal earnings which are exempted by R.C. 2329.66 from execution, garnishment, attachment or sale by judgment creditors retain their statutory exemption when deposited in a bank checking account. The second question is whether personal earnings exempt from judicial process pursuant to R.C. 2329.66(A) are also exempt from a bank's right to set off those funds against a matured debt of a depositor.[2]

---

[2] Appellant also contended below that appellee's action to recover her checking account funds was barred by the doctrines of laches and waiver. Appellant argued that appellee's action was precluded because she did not protest the removal of her funds until the filing of her lawsuit nearly one year after the setoff took place.

We find this contention to be wholly without merit. In order for appellant to succeed on the defense of laches, the bank must establish that it has been materially prejudiced by appellee's delay in asserting her claim. *Connin* v. *Bailey* (1984), 15 Ohio St. 3d 34, 35-36; *Kinney* v. *Mathias* (1984), 10 Ohio St. 3d 72; *Smith* v. *Smith* (1959), 168 Ohio St. 447 [7 O.O.2d 276], paragraph three of the syllabus. As we observed in *Connin, supra,* at 36, "* * * delay in and of itself in asserting a right does not constitute laches—length of time alone is insufficient to constitute a material prejudice." In the instant case, appellant has not even alleged, much less demonstrated, that it has been prejudiced in any way by appellee's delay in asserting her claim. Clearly, then, appellant is not entitled to assert the defense of laches.

As to appellant's defense of waiver, we note that appellant must show that appellee intentionally relinquished a known right. *Allenbaugh* v. *Canton* (1940), 137 Ohio St. 128, 133 [17 O.O. 473]. The evidence in the record demonstrates that appellee did no such thing. On March 18, 1983, one day following the setoff and immediately upon learning of it, appellee telephoned the bank and made her position quite clear. In fact, appellant's agent jotted the following notes on its Installment Loan Department card:

"3-18 CCI [appellee] sd that we had no right to take this money[.] She got it from welfare. He [sic] exhusband is in Winterhaven, Florida[.] 3-16 ripped $369.57 [sic] mad, mad, mad sd she is going to call her atty[.]" (Emphasis sic.)

We first consider the question of whether personal earnings exempt from creditors' reach pursuant to R.C. 2329.66(A) retain their exempt status when deposited in a personal checking account. Appellant would have this court adopt the approach taken by the court of appeals in *Society Natl. Bank* v. *Tallman, supra.* In *Tallman,* the court reasoned that personal earnings voluntarily deposited in a checking account were not exempt from garnishment under R.C. 2329.66(A) because they lost their character as "personal earnings" once deposited. The *Tallman* decision is in conflict with that of the reviewing appellate court in the instant case, which held that statutorily exempt personal earnings deposited in a checking account retain their exempt status, so long as the source of the exempt funds is reasonably traceable. The opinion of the court of appeals herein parallels those issued by the Court of Appeals for Hamilton County in *Bethesda Hospital* v. *Wolf* (1979), 11 O.O. 3d 168, and *First Natl. Master Charge* v. *Gilardi* (1975), 44 Ohio App. 2d 383 [73 O.O.2d 460].

In each of the foregoing cases, various federal court decisions on related issues were analyzed and applied. The first of these federal decisions is *Porter* v. *Aetna Cas. & Sur. Co.* (1962), 370 U.S. 159. In *Porter,* a judgment creditor of an incompetent veteran attached deposits in two federal savings and loan accounts established for his disability compensation. By federal statute, veterans benefits were exempt from attachment by creditors. The precise question posed in *Porter* was whether those benefits retained their exempt status after being deposited in the accounts. The court held at 162 that the funds remained exempt after deposit, stating:

"Since legislation of this type should be liberally construed, * * * [citations omitted] we feel that deposits such as are involved here should remain inviolate. The Congress we believe, intended that veterans in the safekeeping of their benefits should be able to utilize those normal modes adopted by the community, for that purpose—provided the benefit funds, regardless of the technicalities of title and other formalities, are readily available as needed for support and maintenance, actually retain the qualities of moneys, and have not been converted into permanent investments."

The high court followed *Porter* in *Philpott* v. *Essex County Welfare Bd.* (1973), 409 U.S. 413. *Philpott* involved a suit brought by the welfare agency to reach a bank account containing the depositor's social security disability benefits. Again, by federal statute, these benefits were exempt from court action brought by creditors. The court similarly held at 417 that the funds on deposit retained their exempt status and were protected against the use of any legal process to reach them.

A situation different from that in *Porter, supra,* and *Philpott, supra,*

---

This exchange hardly typifies an intentional relinquishment of a known right by appellee. Thus it cannot be said that appellee waived her right to bring an action to recover the funds set off by appellant.

was presented in *Usery* v. *First Natl. Bank of Arizona* (C.A. 9, 1978), 586 F. 2d 107. In *Usery*, the court held that a bank was not required to determine a debtor's right to a wage earner's exemption under the Consumer Credit Protection Act when served with a garnishment directed at the depositor's account. The *Usery* court, in determining that these wages were *not* exempted by the Act once deposited, distinguished its judgment from that of the Supreme Court in *Porter* and *Philpott*. In *Usery*, the court concluded at 111 that the broad statutory exemptions on which *Porter* and *Philpott* were based were not present in the Consumer Credit Protection Act stating:

"* * * In *Porter* the Court held that veterans' benefits remain exempt from process even when deposited in a federal savings and loan association account. However, the statute interpreted by the Court in that case explicitly stated that such benefits 'shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary.' 38 U.S.C. § 3101(a). The clear statement in that statute of a restriction on a creditor's ability to reach veterans' benefits even though they had already passed into the hands of the beneficiary, suggests that in drafting the Consumer Credit Protection Act Congress would have chosen similar unequivocal terms to restrict garnishment of wages already received by an employee if it had intended such a restriction. The Social Security Act, interpreted in *Philpott* to protect from legal process social security payments on deposit in a bank account, has similarly broad language: '[N]one of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process. . . .' 42 U.S.C. § 407. *Unlike the Social Security Act, the Consumer Credit Protection Act protects the funds concerned only from garnishment. If Congress had meant to restrict creditors' access to wages even after they left the control of the employer, it seems anomalous that it did not provide for protection from attachment of such monies while in the hands of the employee, as they did in the case of social security benefits.*" (Emphasis added.)

In the case at bar, the lower courts interpreted and applied the holdings of *Porter*, *Philpott* and *Usery* but reached conflicting results. The *Tallman* court relied on *Usery* in deciding that personal earnings deposited in a checking account do not retain the statutory exemption from garnishment once deposited. We believe, however, that this reliance was mistaken. The *Tallman* court failed to analyze the language of R.C. 2329.66 in order to determine whether its protection would continue after the wages left the control of the employer. Ohio's exemption statute is not so narrowly drafted as the statute at issue in *Usery*. R.C. 2329.66(A) provides in relevant part:

"Every person who is domiciled in this state may hold property exempt from *execution, garnishment, attachment,* or *sale* to satisfy a judgment or order * * *." (Emphasis added.)

That statutory language strongly indicates that exempted earnings are to remain exempt even *after* receipt by an employee. Unlike the Consumer Credit Protection Act, R.C. 2329.66(A) protects the funds concerned not only from garnishment, but also from attachment and execution. Thus, in contrast to the Consumer Credit Protection Act, the General Assembly apparently did intend to restrict creditors' access to exempt wages by providing for protection from attachment of such monies while in the hands of the employee. Therefore, the *Tallman* court's holding is without basis.

The better view, which is consistent with the language of R.C. 2329.66(A), is that statutorily exempt funds do not lose their exempt status when deposited in a personal checking account. Accord *Porter, supra; Philpott, supra; GMAC* v. *Deskins* (1984), 16 Ohio App. 3d 122 (social security benefits); *Goodyear Service Store* v. *Speck* (1976), 48 Ohio App. 2d 115 [2 O.O.3d 82] (welfare benefits); *Gilardi, supra* (welfare benefits); *Wolf, supra* (personal earnings). The legislature's purpose, in exempting certain property from court action brought by creditors, was to protect funds intended primarily for maintenance and support of the debtor's family. *Dennis* v. *Smith* (1932), 125 Ohio St. 120. This legislative intent would be frustrated if exempt funds were automatically deprived of their statutory immunity when deposited in a checking account which a depositor commonly maintains in order to pay by check those regular subsistence expenses he incurs.

In the instant case, the parties agreed that appellee's wages were exempt from legal process pursuant to R.C. 2329.66(A)(13). The parties also agreed that the proceeds of her checking account were from these wages. Thus, the source of the exempt funds was not only reasonably traceable, it was conclusively known. Consistent with the foregoing, then, we therefore affirm the judgment of the court of appeals below and hold that personal earnings exempt from execution, garnishment, attachment, or sale to satisfy a judgment or order pursuant to R.C. 2329.66(A)(13) retain their exempt status when deposited in a personal checking account, so long as the source of the exempt funds is known or reasonably traceable.[3]

Having decided that appellee's personal earnings retain the statutory exemption from judicial process when deposited in a personal checking ac-

---

[3] Additionally, we note that appellee's funds on deposit in her checking account retain their exemption because they meet the test set forth in *Porter* v. *Aetna Cas. & Sur. Co.* (1962), 370 U.S. 159, 162. Appellee's funds were "readily available as needed for support and maintenance," retained their quality as monies and were not converted into a permanent investment.

Further, and as the appellate court observed in *First Natl. Master Charge* v. *Gilardi* (1975), 44 Ohio App. 2d 383, 385 [73 O.O.2d 460], our holding today may in many instances require the tracing of monies on deposit in a checking account in order to determine the amount attributable to an exempt source of funds.

count, we must now determine whether those funds are also exempt from the bank's right of setoff exercised in the instant case.

Bank setoff is an extrajudicial self-help remedy based on general principles of equity. It allows a bank to apply general deposits of a depositor against a depositor's matured debt. Courts have found that this right arises from the contractual debtor-creditor relationship created between depositor and bank when an account is opened.[4] See TeSelle, Banker's Right of Setoff—Banker Beware (1981), 34 Okla. L. Rev. 40; Note, Banking Setoff: A Study in Commercial Obsolescence (1972), 23 Hastings L. Rev. 1585, 1586-1587.

The banker's right of setoff asserted in the instant case is rooted in the ancient common law. As we explained in *Walter* v. *Natl. City Bank* (1975), 42 Ohio St. 2d 524, 526-527 [71 O.O.2d 513]:

"* * * Historically, the bank's right to setoff [*sic*] derives from the bank lien of the law merchant, and that right still possesses some of the characteristics of a lien, since it permits the bank by self-help to take priority over others claiming a right to the funds on deposit. Whereas, in the case of an ordinary debtor, setoff is available as an equitable and statutory defense, in the case of a bank, setoff becomes a means by which the bank, because of its position as a commercial middleman, acquires a priority of right whenever it acts as creditor for a depositor." See, also, TeSelle, *supra,* at 40; Note, Banking Setoff, *supra,* at 1586.

Appellant herein contends that a bank's right of setoff is in no way defeated by the exemption provisions of R.C. 2329.66.[5] As distinguished

---

[4] The exercise of setoff further requires certain prerequisites. First, there must be mutuality of obligation between bank and depositor. Second, the funds must not be on deposit in a special purpose account. TeSelle, Banker's Right of Setoff—Banker Beware (1981), 34 Okla. L. Rev. 40, 42; *Chickerneo* v. *Society Natl. Bank* (1979), 58 Ohio St. 2d 315, 318 [12 O.O.3d 298].

[5] Appellant also contends that it acted pursuant to the authority granted by R.C. 2309.19 in setting off appellee's funds in the instant case. We do not agree. R.C. 2309.19 provides as follows:

"When cross demands have existed between persons under such circumstances that if one had brought an action against the other a counterclaim could have been set up, neither can be deprived of the benefit thereof by assignment by the other, or by his death. The two demands must be deemed compensated so far as they equal each other."

By its terms, this statute appears to be restricted to cases of death and assignment. Indeed, the Sixth Circuit Court of Appeals concluded that R.C. 2309.19 has limited application in *Baker* v. *Natl. City Bank* (C.A. 6, 1975), 511 F. 2d 1016 [75 O.O.2d 275]. In *Baker,* the court stated at 1017-1018 that:

"This statute merely provides that a right to set off is not defeated by an assignment or by death of one of the parties to the debtor-creditor relationship. The section declares an automatic setoff upon death or assignment by providing that the two demands shall be 'deemed compensated.' It does not deal with the mechanics of effecting a setoff in other circumstances."

We are in accord with the Sixth Circuit's analysis. R.C. 2309.19 does not create a statutory right of setoff, but merely preserves that right in instances of assignment or death,

from garnishment, attachment, execution or sale to satisfy a judgment (all of which involve judicial process), appellant argues that self-help setoff is *not* one of the creditors' remedies within the ambit of the protection afforded by the exemption statute. We must agree with appellant on this issue.

We realize that the longstanding purpose of Ohio's exemption statute is to protect from creditors' legal process those debtors with minimal assets "* * * for the benefit of the children as well as for the parents, in order that the children * * * may be protected against the dangers to which they would be exposed without those household facilities which make the family relation possible * * *." *Dennis* v. *Smith, supra,* at 125. Accord *Dean* v. *McMullen* (1924), 109 Ohio St. 309, 313-314; *Williams* v. *Donough* (1902), 65 Ohio St. 499.

While we acknowledge the liberal construction of exemption statutes afforded by the courts of this state, *Dennis, supra,* at 124, appellee essentially urges this court to expand R.C. 2329.66 so as to exempt her funds from the banker's right of setoff. This would involve reading into the statute protection from a common-law, extrajudicial creditors' remedy which was explicitly omitted by the legislature when R.C. 2329.66 was drafted. Moreover, this exemption statute has been amended on many occasions, most recently in 1984, each time without any reference to the banker's right of setoff. Thus, noticeably absent from the legislative history of this provision is any legislative intent to provide exemption protection from the setoff remedy available to banks.

As in other instances of statutory interpretation, even a liberal construction of R.C. 2329.66 does not give us license to enlarge this statute or strain its meaning. We have made it clear that "* * * [b]y 'liberal construction' is not meant that words and phrases shall be given an unnatural meaning, or that the meaning shall be * * * expanded to meet a particular state of facts." *Dennis, supra,* at 124. See, also, *Morris Plan Bank* v. *Viona* (1930), 122 Ohio St. 28.

This court is not unmindful of the devastating effect the exercise of a bank's right of self-help setoff may have on depositors, like appellee, whose personal earnings are minimal. But we are not free, in interpreting this statute, simply to rewrite it on grounds we are thereby improving the law. *Seeley* v. *Expert, Inc.* (1971), 26 Ohio St. 2d 61, 71 [55 O.O.2d 120]. R.C. 2329.66 exempts certain funds of a debtor only from the use of judicial process by creditors in execution, garnishment, attachment or sale to satisfy a judgment or order. It is not the function of this court to create a right of exemption from a bank's extrajudicial right of setoff where none is found in the statute. Rather, if there is to be a resolution of this

---

neither of which is present in the instant case. Thus, appellant cannot rely on statutory authorization for its action against appellee. Rather, the bank's right of setoff asserted in this case has its source in the common law.

dilemma, it must come from our legislature. We therefore hold that personal earnings on deposit in a checking account are not exempted by R.C. 2329.66(A) from a bank's right to set off those funds against a matured debt of a depositor. The judgment of the court of appeals is accordingly affirmed in part and reversed in part.

*Judgment affirmed in part*
*and reversed in part.*

CELEBREZZE, C.J., SWEENEY, LOCHER and C. BROWN, JJ., concur.

DOUGLAS and WRIGHT, JJ., concur in judgment only.

HOLMES, J., concurs in part, dissents in part and dissents from the judgment.

HOLMES, J., concurring in part, dissenting in part and dissenting from the judgment.

I concur with the majority's holding that personal earnings, exempt from creditors' reach pursuant to R.C. 2329.66(A), retain their exempt status when deposited in a personal checking account, and its analysis of that issue. I also agree with the majority's resolution of the waiver issue in light of the facts that appellee not only notified the bank of her objections within forty-eight hours of the bank's debiting of her account, but also filed the complaint within a year of such action.[6] However, I must dissent from the majority's analysis and conclusion on the issue of whether appellee's personal earnings, exempt under R.C. 2329.66, are also exempt from the bank's common-law right of setoff.

Common-law setoff rights generally have been found to exist whenever two parties owe, under independent contracts, a definite amount to each other. See *Witham* v. *South Side Building & Loan Assn. of Lima* (1938), 133 Ohio St. 560, 562 [11 O.O. 269]; and 9 Ohio Jurisprudence 3d (1979), Banks, Section 178.[7] See, also, *Chickerneo* v. *Society Natl. Bank*

---

[6] Appellant set off $369.59 from appellee's personal account on March 16, 1983 and appellee filed the complaint in the instant cause on March 15, 1984. Appellee reacted in a more timely fashion than did appellant to its three-year-old judgment which was admittedly obtained April 7, 1980. In any event, the case *sub judice* is distinguishable from *Matavich* v. *Budak* (1982), 4 Ohio App. 3d 228, in which the debtor did not assert the exemption until after the attached funds had been paid into court and disbursed to the creditor. Additionally, this court has held that before silence will be construed as a waiver of rights expressly conferred by statute, the duty to speak must be imperative, and the silence must clearly indicate an intent to waive, or be maintained under such circumstances that equity will impute thereto such intent. In the case *sub judice*, there is no evidence of any of these factors.

[7] This court's holding in *Serhant* v. *Haker* (1906), 73 Ohio St. 250, that a statutory setoff is not subject to other statutes providing for exemptions, is inapposite because the then-

(1979), 58 Ohio St. 2d 315, 318 [12 O.O.3d 298] (bank may set off when there is mutuality of obligation). Although, here, the bank owed its depositor $369.59 when she owed the bank $486.62, plus interest and costs, the depositor, whose debt had been reduced to a judgment, was protected "* * * from execution, garnishment, attachment, or sale to satisfy a judgment * * *" to the limited extent provided by R.C. 2329.66(A). In other words, the statutory exemptions are in abrogation of common-law rights to that limited extent, *e.g.,* thirty days of personal earnings in the maximum amounts allowed in R.C. 2329.66(A)(13)(a) and (b), not here exceeded.

The majority concedes that R.C. 2329.66 protects appellee's funds, here stipulated as qualifying for its personal earnings exemption, from execution, garnishment, attachment, or sale, but evidently believes allowing such protection against setoff rights would be an unlawful enlargement of the statute. However, R.C. 2329.66 was clearly intended to protect a subsistence level of a debtor's income from even more direct means of obtaining payment, not just judicial processes. The section sets forth the various forms of statutory aids to satisfy judgments; however, the self-help remedy of setoff is a form of extrajudicial attachment, 24 Ohio Jurisprudence 3d (1980), Creditors Rights, Section 267, and it may reasonably be concluded that the General Assembly must have meant to include common-law setoff rights within the meaning of R.C. 2329.66. The unreasonable result created by the majority protects a debtor's subsistence level exemptions under R.C. 2329.66 from third-party creditors, but not from other creditors holding the debtor's exempt funds. This result is not only contrary to R.C. 1.47(C), in which it is presumed that a just and reasonable result is intended from a statute, but also contrary to R.C. 1.11. This latter statute provides:

"Remedial laws and all proceedings under them shall be liberally construed in order to promote their object and assist the parties in obtaining justice. The rule of the common law that statutes in derogation of the common law must be strictly construed has no application to remedial laws * * *."

The creditor's common-law right of setoff may be, and has been, restricted by a state law and policy designed to protect a certain percent-

---

existing statutes, G.C. 5066-5077, have all been repealed, except to the extent R.C. 2309.19 contains remnants of G.C. 5073. The current R.C. 2309.19 provides:

"When cross demands have existed between persons under such circumstances that if one had brought an action against the other a counterclaim could have been set up, neither can be deprived of the benefit thereof by assignment by the other, or by his death. The two demands must be deemed compensated so far as they equal each other."

This statute has been held to allow automatic setoffs upon death or assignment of one of the parties to the debtor-creditor relationship, but not to deal with the mechanics of effecting a setoff in other circumstances. *Baker* v. *Natl. City Bank of Cleveland* (C.A. 6, 1975), 511 F. 2d 1016 [75 O.O.2d 275]. As neither death nor assignment is here involved, nothing more need be said on R.C. 2309.19.

age of a debtor's deposits derived from wages from coercive processes of law. The obvious purpose of the exemption statute is to allow the wage earner access to a small amount of earnings in order to purchase food, housing, health care and other necessities of life which the legislature decided creditors could not take. Since other creditors could not execute on appellee's deposit account, it is anomalous to allow appellant a setoff. Surely the justice meant to be obtained by R.C. 2329.66 was the protection of thirty days' wages from this debtor's part-time work in order to care for herself and her two children.

It is against public policy to forcibly claim exempt funds. See *Dean* v. *McMullen* (1924), 109 Ohio St. 309, 313-314.[8] As the trial court so aptly phrased it: "Exemption laws, which are in derogation of the common-law rights of creditors, in the context of the economic realities of our contemporary world, seek to afford some measure of protection to the family, to the debtor himself and to the public generally. *Williams* v. *Donough,* 65 [Ohio St.] 499, 63 N.E. 84; *Dennis* v. *Smith,* 125 [Ohio St.] 120, 180 N.E. 638 * * *. Their underlying purpose is the humane one of securing debtors from unjust and harassing litigation. *Edwards* v. *Kearzey,* 96 U.S. 595, 24 L.Ed. 793; *Chandler* v. *Horne,* 23 [Ohio App.] 1 * * *."

Since these funds could not be attached through judicial processes, by an action at law, appellant should not be able to accomplish the same result through self-help, because "[w]here an obligation is not enforceable in an action at law, it cannot be set off against an opposing claim." *Kocsorak* v. *Cleveland Trust Co.* (1949), 151 Ohio St. 212 [39 O.O. 36], paragraph two of the syllabus. Appellant's argument that it has no knowledge of the exempt status of its depositor's funds is unpersuasive because, should the bank have chosen a judicial proceeding under R.C. Chapter 2716, which would grant a right to a hearing, a court would determine whether the funds are exempt. When a bank resorts to self-help techniques, it accepts the risks involved: "* * * [T]he bank occupies the same position as any other creditor who seeks to satisfy his claim by levy upon a bank account; such a creditor can either inquire beforehand, or levy upon the account, taking the risk that he is seizing exempt property." *Kruger* v. *Wells Fargo Bank* (1974), 113 Cal. Rptr. 449, 460-461, fn. 26, 11 Cal. 3d 352, 370.

Other state supreme courts facing this issue have not allowed a setoff or a counterclaim to defeat a debtor's exemption. *Kruger, supra; Finance Acceptance Co.* v. *Breaux* (1966), 160 Colo. 510, 419 P. 2d 955; *Atlantic Life Ins. Co.* v. *Ring* (1936), 167 Va. 121, 187 S.E. 449; *Edgerton* v. *Johnson* (1940), 218 N.C. 300, 10 S.E. 2d 918; *Atkinson* v. *Pittman* (1886),

---

[8] In *Dean, supra,* at 313-314, we found that " '[t]he statutes which allow a debtor, being a householder and having a family for which he provides, to retain, as against the legal remedies of his creditors, certain articles of prime necessity, to a limited amount, are based upon views of policy and humanity which would be frustrated if an agreement waiving his right could be sustained.' "

47 Ark. 464, 2 S.W. 114; *Banks* v. *Rodenbach* (1880), 54 Iowa 695, 7 N.W. 152; *William Deering Co.* v. *Ruffner* (1891), 32 Neb. 845, 49 N.W. 771; *First Natl. Bank of Cushing* v. *Funnell* (1930), 144 Okla. 188, 290 P. 177; *Ex parte Rizer* (1932), 165 S.C. 487, 164 S.E. 131; *Collier* v. *Murphy* (1891), 90 Tenn. 300, 16 S.W. 465; Annotation (1937), 106 A.L.R. 1070-1084. While there is authority to the contrary, " '* * * the majority rule is that in any action the subject of which is exempt the defendant will not be permitted to defeat the exemption by setting up a counterclaim or set-off * * *'. To allow a set-off would in most cases result in a palpable evasion of the law." *Kruger, supra,* 113 Cal. Rptr. at 459-460, 11 Cal. 3d at 369, citing *Finance Acceptance Co., supra,* at 957-958.

I feel that the majority rule should be followed in Ohio and that allowance of a setoff here results in an evasion of R.C. 2329.66. Accordingly, I would affirm the judgment of the court of appeals in all respects.