**In re Drennen Scott SWICKARD, Carla Maureen Swickard, Debtors.**

**Bankruptcy No. 2–90–06960.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Aug. 22, 1991.

William A. Gardner, Columbus, Ohio, for debtors.

David M. Whittaker, Luper, Wolinetz, Sheriff & Neidenthal, Columbus, Ohio, for Columbus Teachers Federal Credit Union.

Myron N. Terlecky, Columbus, Ohio, Chapter 7 Trustee.

Charles M. Caldwell, Office of the U.S. Trustee, Columbus, Ohio.

OPINION AND AMENDED ORDER GRANTING MOTION OF COLUMBUS TEACHERS FEDERAL CREDIT UNION FOR RELIEF FROM THE AUTOMATIC STAY AND FOR SET-OFF

BARBARA J. SELLERS, Bankruptcy Judge.

### I. *Preliminary Considerations And Jurisdictional Statement*

This matter is before the Court upon the motion of Columbus Teachers Federal Credit Union ("Credit Union") seeking relief from the automatic stay imposed by 11 U.S.C. § 362(a) to proceed with its state law rights against certain funds held in the debtors' share accounts with the Credit Union. Although the Chapter 7 trustee did not oppose the relief from stay, the debtors filed a memorandum opposing the Credit Union's motion on December 13, 1990. Unaware of the debtors' opposition to the Credit Union's motion, the Court entered an order on January 4, 1991, granting such motion. However, upon becoming aware of the debtors' opposition, the Court set this matter for hearing to decide whether the order granting relief from stay should be set aside. That hearing was held on March 18, 1991, at which time counsel for both the Credit Union and the debtors appeared.

At the hearing, counsel for the Credit Union initially argued that, because the debtors' opposition was filed three days after the 20–day response period provided by Local Bankruptcy Rule 6.0(c), the Court's order of January 4, 1991 should not be vacated. The debtors did not dispute that the filing of their opposition was late, but urged the Court to nevertheless hear and decide the merits of the parties' respective positions. Upon consideration, the Court decided to hear the matter despite the debtors' technical violation of the Local Bankruptcy Rules. The parties' arguments raised numerous and somewhat complex issues and, therefore, the Court took this matter under advisement.

The Court has jurisdiction in this matter under 28 U.S.C. § 1334(b) and the General Order of Reference previously entered in this district. This is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(G) which this bankruptcy judge may hear and determine. For the reasons set forth below, the Court holds that the Credit Union is entitled to relief from stay. The Court hereby amends its order of January 4, 1991 so as to fully set forth its opinion.

### II. *Factual Background*

The parties presented no testimonial evidence, but filed a short stipulation of facts and made legal arguments. Generally, the stipulated facts are as follows.

On March 15, 1990, the debtors obtained a loan from the Credit Union in the principal amount of $2,643.75. On July 15, 1986, the debtors obtained a loan from the Credit Union in the principal amount of $7,117.33. As part of the loan agreements, the debtors pledged all paid shares and payments on shares in the Credit Union as partial security for the loans.

The debtors filed their bankruptcy petition on October 18, 1990. On October 19, 1990, the debtors requested to withdraw the funds in their share draft account from the Credit Union. The debtors also had a savings account, called a prime shares account, with the Credit Union. At this time, the debtors were delinquent on their obligation to the Credit Union. Unaware of the debtors' bankruptcy, the Credit Union issued a check in the amount of $854.99. The check was deposited by the debtors in an account at the Huntington National

Bank on October 19, 1990. Subsequent to the issuance of the check, the Credit Union discovered the loan delinquency and stopped payment on this check before it cleared. The Credit Union did not receive notice of the debtors' bankruptcy until after October 19, 1990.

The amount presently due and owing from the debtors to the Credit Union exceeds the amount of $854.99. The debtors have claimed an exemption in the funds from the share accounts.

### III. *Issue Presented*

Perhaps restrained in their preparation by the relatively small amount of money at stake in this matter, the parties came before the Court with more questions than answers. The parties made arguments relating to various issues, including whether the Credit Union had a valid security interest in the funds held in the debtors' share accounts, whether such a security interest is enforceable notwithstanding the debtors' claim of exemption as to such funds, and whether the Credit Union relinquished its security interest by virtue of its issuance of the $854.99 check to the debtors.[1] While such issues are discussed in a number of judicial opinions and are of some interest to the Court (and perhaps greater interest to the parties), the Court need not decide those issues at present. The only issue which the Court must decide is whether the debtors' funds held in the share accounts are exempt from the Credit Union's right of setoff. If such funds are not exempt, relief from stay is appropriate.

### IV. *Legal Discussion*

Resolution of the presented issue necessarily involves discussion of the interplay between sections 553 and 522(c) of the Bankruptcy Code, as well as the debtors' exemption rights under Ohio Revised Code § 2329.66. Section 553 of Title 11, United States Code, provides that a creditor's non-bankruptcy right of setoff is preserved, with some exceptions not applicable in this matter, notwithstanding a debtor's filing for bankruptcy relief. Exercise of such right is, however, subject to the automatic stay. Here, the Credit Union seeks to assert its setoff rights as permitted under Ohio law.

Section 522(c), on the other hand, provides:

> Unless the case is dismissed, property exempted under this section is not liable during or after the case for any debt of the debtor that arose, or that is determined under section 502 of this title as if such debt has arisen, before the commencement of the case, except—
>
> (1) a debt of a kind specified in section 523(a)(1) or section 523(a)(5) of this title; or
>
> (2) a debt secured by a lien that is—
>
>   (A)(i) not avoided under subsection (f) or (g) of this section or under section 544, 545, 547, 548, 549, or 724(a) of this title; and
>
>   (ii) not voided under section 506(d) of this title.

Thus, exempt property (with certain enumerated exceptions) is insulated from prepetition claims.

Viewed together, the provisions of sections 553 and 522(c) appear to be in conflict. Section 553 preserves a creditor's non-bankruptcy right to set off mutual prepetition debts; however, section 522(c) protects exempt property from being liable for most prepetition debts.

Bankruptcy courts attempting to resolve this apparent statutory conflict have utilized varied analyses, but most have held that a creditor's right of setoff may not be exercised against exempt property. *See, In re Laues,* 90 B.R. 158 (Bankr.E.D.N.C. 1988); *In re Wilde,* 85 B.R. 147 (Bankr. D.N.M.1988); *In re Hinson,* 65 B.R. 675 (Bankr.W.D.Tenn.1986); *In re Davies,* 27 B.R. 898 (Bankr.E.D.N.Y.1983); *In re Monteith,* 23 B.R. 601 (Bankr.N.D.Ohio 1982); *In re Haffner,* 12 B.R. 371 (Bankr. M.D.Tenn.1981). At least two bankruptcy cases, however, have held that a debtor's exempt property remains subject to a creditor's right of setoff. *See, In re Pieri and Boucher,* 86 B.R. 208 (9th Cir. BAP 1988);

---

**1.** No issue was raised by the parties as to whether the Credit Union's stopping payment on the $854.99 constituted a violation of the automatic stay imposed by 11 U.S.C. § 362(a).

*Matter of Lee,* 40 B.R. 123 (Bankr. E.D.Mich.1984).

In view of the uncertainty created when sections 553 and 522(c) are read in conjunction, the Court has little doubt that future cases will continue to struggle with that issue. However, the interplay between sections 553 and 522(c) need not be decided here, as a more basic determination is dispositive of this matter.

■ Before any conflict between sections 553 and 522(c) arises, it must be established (1) that the creditor has a non-bankruptcy right of setoff and (2) that the debtor's property against which the creditor wishes to set off would be exempt under applicable law. In the present matter, the debtors have not challenged the Credit Union's alleged setoff right and such right appears to the Court to properly exist under Ohio law. As to whether the funds against which the Credit Union seeks to set off are exempt, an examination of Ohio law reveals that they are not.

■ The controlling case in Ohio is *Daugherty v. Central Trust Co. of Northeastern Ohio,* 28 Ohio St.3d 441, 504 N.E.2d 1100 (1986), in which the Supreme Court of Ohio held that a debtor may not under Ohio law exempt property from a creditor's right of setoff.[2] In so holding, the Supreme Court focused on the language of Ohio Revised Code § 2329.66(A), which provides in relevant part:

> Every person who is domiciled in this state may hold property exempt from *execution, garnishment, attachment, or sale* to satisfy a judgment or order.... (emphasis added).

The Supreme Court of Ohio concluded that, unlike garnishment, attachment, execution or sale to satisfy a judgment or order (all of which involve judicial process), a creditor's self-help remedy of setoff is not within the ambit of protection afforded debtors under the exemption statute. In reaching its conclusion, the Supreme Court reasoned as follows:

> While we acknowledge the liberal construction of exemption statutes afforded by the courts of this state, ... appellee essentially urges this court to expand R.C. 1329.66 so as to exempt her funds from the banker's right of setoff. This would involve reading into the statute protection from a common-law, extrajudicial creditors' remedy which was explicitly omitted by the legislature when R.C. 2329.66 was drafted. Moreover, this exemption statute has been amended on many occasions, most recently in 1984, each time without any reference to the banker's right of setoff. Thus, noticeably absent from the legislative history of this provision is any legislative intent to provide exemption protection from the setoff remedy available to banks.

28 Ohio St.3d at 447, 504 N.E.2d at 1105.

Following the holding of *Daugherty,* as this Court must, the Court concludes that the funds held in the debtors' share accounts at the Credit Union are not exempt.

## V. *Conclusion*

Various intriguing issues were raised by the parties in this relief from stay matter; however, because binding Ohio precedent holds that the debtors' funds held in their share accounts with the Credit Union are not exempt as against a financial institution holding a right of setoff, the Court need not address those issues at this time. Section 553 of the Bankruptcy Code preserves the Credit Union's state law setoff rights and, because those funds are not exempt under Ohio law from the right of the Credit Union to set off a mutual debt, no conflict between that section and section 522(c) of the Bankruptcy Code is presented. The Credit Union shall be, and hereby is, again GRANTED relief from the automatic

---

**2.** Ohio appears to be in a minority in this regard. Numerous other non-bankruptcy decisions have not allowed a creditor's setoff right or counterclaim to defeat a debtor's statutory exemption. *See, e.g., Kruger v. Wells Fargo Bank,* 11 Cal.3d 352, 113 Cal.Rptr. 449, 521 P.2d 441 (1974); *Finance Acceptance Co. v. Breaux,* 160 Colo. 510, 419 P.2d 955 (1966); *Atlantic Life Ins. Co. v. Ring,* 167 Va. 121, 187 S.E. 449 (1936); *Edgerton v. Johnson,* 218 N.C. 300, 10 S.E.2d 918 (1940); 106 A.L.R. 1070 (1937).

stay and the Court's prior order will not be vacated.

IT IS SO ORDERED.