United States Court of Appeals
Fifth Circuit

**F I L E D**

July 19, 2005

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04-30947

_____

In The Matter Of: TOBY J. SINCLAIR,

Debtor

_____

JOHN S. HODGE, Trustee,

Appellee,

v.

TOBY J. SINCLAIR,

Appellant.

_____

Appeal from the United States District Court
for the Western District of Louisiana

_____

Before BARKSDALE, DeMOSS, and PRADO, Circuit Judges.

PRADO, Circuit Judge:

Appellant, a debtor in bankruptcy, contends that Louisiana law protects certain amounts of money in his checking account from seizure because this money is attributable to his wages. Although the bankruptcy court agreed with appellant, the district court reached the opposite conclusion and ruled that the funds in appellant's accounts were not exempt from turnover. We agree with the district court and so affirm.

Toby James Sinclair filed a Chapter 7 bankruptcy petition

1

eight days after his monthly salary was direct-deposited into his checking account. Sinclair, a teacher, received approximately $1,843.02 in take-home pay each month. At the time Sinclair filed for bankruptcy, his checking account contained $2,045.75. In response to a turnover request by the trustee, Sinclair claimed an exemption for 75% of the money in his checking account based on LA. REV. STAT. ANN. § 13:3881, which he contended protected 75% of his wages from any process.

The bankruptcy court agreed with Sinclair and declared an amount equal to 75% of Sinclair's most recent wages to be exempt. The court concluded that the exemption covered wages in an account "as long as the monetary sums representing such wages are still intact and can be readily identified/traced to debtor's wages." Based on this reading, the court ordered only 25% of the funds from the recent wages (or $460.75) to be turned over. The court also ordered Sinclair to turn over about $202.73 that was already in his account when his most recent monthly salary had been deposited.

The trustee appealed this ruling to the district court, which disagreed with the bankruptcy court's interpretation of the exemption statute and so reversed the bankruptcy court's order. The district court determined that the disposable earnings exemption only applied in the garnishment context and only to wages that were still controlled by the employer. Accordingly, the court held that the exemption did not apply to Sinclair's

2

wages once they were deposited into his checking account.  The district court also emphasized the potential for abuse in Sinclair's interpretation of the statute: before filing for bankruptcy, debtors could shelter their wages in a separate account, which would then become 75% exempt.

We review the district court's decision under the same standards that the district court used to review the bankruptcy court's decision.  *Kennard v. MBank Waco, N.A.* (*In re Kennard*), 970 F.2d 1455, 1457 (5th Cir. 1992).  Here, the only issue is a legal one, which we review de novo.  *Id*.

Louisiana has opted out of the federal bankruptcy exemptions.  LA. REV. STAT. ANN. § 13:3881(B)(1) (West 1991).  Instead, in bankruptcy cases "there shall be exempt from the property of the estate of an individual debtor only that property and income which is exempt under the laws of the state of Louisiana and under federal laws other than Subsection (d) of Section 522 of [the Bankruptcy Code]."  *Id*.  One specific Louisiana law lies at the center of this case.

The disputed statute sets out several "[g]eneral exemptions from seizure," including the "disposable earnings" exemption:

> The following income or property of a debtor is exempt from seizure under any writ, mandate, or process whatsoever, except as otherwise herein provided:
>
> (1)(a) Seventy-five percent of his disposable earnings for any week . . . .
>
> (b) The term "disposable earnings" means that part of

3

> the earnings of any individual remaining after the
> deduction from those earnings of any amounts required
> by law to be withheld and which amounts are reasonable
> and are being deducted in the usual course of business
> at the time the garnishment is served upon the employer
> for the purpose of providing benefits for retirement,
> medical insurance coverage, life insurance coverage and
> which amounts are legally due or owed to the employer
> in the usual course of business at the time the
> garnishment is served.

LA. REV. STAT. ANN. § 13:3881 (West Supp. 2005). Sinclair contends that this statute continues to protect his wages after they are deposited in his account. The trustee, on the other hand, argues that the exemption only applies in garnishment actions when wages still remain under the employer's control.

To decide whether § 13:3881 creates an exemption for funds in an employee's bank account, we begin by examining the language of the statute. Section 13:3881's opening phrase is broad, making property "exempt from seizure under any writ, mandate, or process whatsoever." Sinclair emphasizes this breadth in arguing that the statute protects the amounts in his account from turnover. But the language defining "disposable earnings," including the description "at the time the garnishment is served upon the employer," is much narrower. The trustee contends that although the opening phrase of the statute applies to all forms of attachment, the limiting language in the definition of "disposable earnings" makes it clear that the disposable earnings exemption only applies to attempts to garnish wages before they have been paid.

4

The trustee also analogizes to the Louisiana exemption for worker's compensation benefits, which states, "Claims or payments due under this Chapter . . . shall not be assignable, and shall be exempt from all claims of creditors and from levy or execution or attachment or garnishment, except under a judgment for alimony in favor of a wife, or an ascendant or descendant."  LA. REV. STAT. ANN. § 23:1205(A) (West 1998).  Louisiana courts have interpreted this provision as applying to benefits due, not benefits received.  *LeBleu v. Deshotel*, 628 So. 2d 1227, 1229 (La. Ct. App. 3d Cir. 1993); *Hawthorn v. Davis*, 140 So. 56 (La. Ct. App. 1st Cir. 1932).  On the other hand, there are Louisiana statutes in which the legislature specifically exempted accumulated funds or benefits "paid" to workers.  *See* LA. REV. STAT. ANN. § 13:3881(D)(1) (exempting "all proceeds of and payments under all tax-deferred arrangements and annuity contracts");  LA. REV. STAT. ANN. 11:405 (West 2002) (exempting "any other benefit paid . . . under the provisions of this Chapter").[1]  These statutes protect funds in the hands of a debtor.  This kind of statutory language, specifically protecting both amounts owing and amounts that have been paid, is absent

---

[1]The Louisiana statute also stands in contrast to a Florida statute that expressly exempts wages after they have been deposited in a bank account.  *See* FLA. STAT. § 222.11(3). Before the Florida statute was specifically amended, wages in an account were not exempt.  *In re Ryzner*, 208 B.R. 568, 569 (Bankr. M.D. Fla. 1997).

from § 13:3881.[2]

Two Louisiana cases have interpreted § 13:3881's disposable earnings exemption, each reaching a different conclusion. In *Legier v. Legier*, the court held that "disposable earnings" do not include accumulated vacation and holiday pay being held in a fund. 357 So. 2d 1203, 1207 (La. App. 4th Cir. 1978). *Legier* involved an employee's former wife's attempts to garnish the amounts held in this fund to pay for child support. *Id*. at 1204. The disposable earnings exemption "appl[ied] to garnishment of weekly, biweekly or monthly earnings at the time they are paid to the employee," but not "to accumulated fringe benefits which have accrued prior to the garnishment." *Id*. at 1206. Of particular significance was that "the accumulated fund is not a periodic payment subject to exemption." *Id*. at 1207. But in *First National Bank of Commerce v. Latiker*, the same appellate court concluded that accumulated vacation pay held in a fund

_____

[2]*Cf. Philpott v. Essex County Welfare Bd.*, 409 U.S. 413, 415, 417 (1973) (protecting retroactive social security payments that had been deposited into an account under broad statutory language: "[N]one of the moneys paid or payable . . . under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process . . . ."); *Porter v. Aetna Cas. & Surety Co.*, 370 U.S. 159, 159 n.1, 162 (1962) (holding that veterans' benefit payments retained their exempt character after they were deposited into an account so long as those accounts "retain[ed] the qualities of moneys;" statutory language provided that those benefits "shall be exempt from the claim of creditors, and shall not be liable to attachment, levy or seizure . . . either before or after receipt by the beneficiary."(quoting former 38 U.S.C. §3101(a))).

6

constituted "disposable earnings" and thus was entitled to the exemption. 432 So. 2d 293, 295-96 (La. App. 4th Cir. 1983). The *Latiker* court did not overrule *Legier*. Instead, it distinguished *Legier* "because that seizure was for payment of child support; the policy considerations which presumably played a role in that decision are not present in a case such as the instant one where the garnishment and seizure seeks to satisfy ordinary debts."[3] *Id*. at 295. The *Latiker* court provided one other method for distinguishing *Legier*: "the nature of the fund was not fully explained in the *Legier* case," whereas in *Latiker* the fund was "nothing other than deferred payment of wages." *Id*. The distinction between the two cases is far from clear, and neither one provides a clear answer to our question.

Courts outside Louisiana have interpreted similar statutes, including the federal Consumer Credit Protection Act ("CCPA"), which provides an exemption from garnishment for disposable earnings. 15 U.S.C. § 1673. The CCPA defines "earnings" as "compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program." 15 U.S.C. § 1672(a). In *Kokoszka v.*

---

[3] The *Legier* court specifically noted that "we need not address plaintiff's argument that the exemption does not apply to enforcement of an executory judgment for unpaid accumulated child support." 357 So. 2d at 1207.

7

*Belford*, the Supreme Court examined whether a tax refund constituted "disposable earnings" under the CCPA.  417 U.S. 642, 649 (1974).  The Court concluded that it did not, even though the refund had its source in wages.  *Id*. at 652.  Earnings "were limited to 'periodic payments of compensation and (do) not pertain to every asset that is traceable in some way to such compensation.'"  *Id*. at 651 (quoting *In re Kokoszka*, 479 F.2d 990, 997 (2d Cir. 1973)).  In fact, the Court warned that "'[j]ust because some property interest had its source in wages . . . does not give it special protection, for to do so would exempt from the bankrupt estate most of the property owned by many bankrupts, such as savings accounts and automobiles which had their origin in wages.'"  *Kokoszka*, 417 U.S. at 648 (quoting *Kokoszka*, 479 F.2d at 995).  More directly on point, the Ninth Circuit has held that under this statute, wages did not retain their status as "earnings" once they were deposited into an employee's bank account.  *Usery v. First Nat'l Bank*, 586 F.2d 107 (9th Cir. 1978).

Yet courts are not unanimous in concluding that disposable earnings exemption statutes do not continue to apply to wages once they have taken another form, such as by being placed in an account or being held in a retirement fund.  For example, in *Guidry v. Sheet Metal Workers National Pension Fund*, a union tried to garnish the pension benefits of one of its former

officials.  39 F.3d 1078, 1080–81 (10th Cir. 1994).  These benefits were placed in a fund, which the official claimed was exempt under a Colorado statute that exempted 75% of "disposable earnings" from garnishment.  *Id*. at 1084.  Under that statute, "earnings" included "compensation paid or payable for personal services, whether denominated as . . . avails of any pension or retirement benefits, or deferred compensation plan . . . or otherwise."  *Id*. (quoting COLO. REV. STAT. § 13-54-104(1)(b)(1987)).  The Tenth Circuit, relying on a Colorado Supreme Court case, concluded that the money in the fund was exempt from garnishment.  *Id*. at 1086 (citing *Rutter v. Shumway*, 16 Colo. 95, 26 P. 321 (1891)).  The court noted that the Colorado court emphasized the lack of any statutory language specifically limiting the exemption to funds in the employer's hands.  *Id*. at 1086.  The *Guidry* court also used the "compensation paid" language to conclude that pension benefits remain exempt.[4]  *Id*. at 1087.

The Ohio Supreme Court, too, concluded that under Ohio law, traceable wages retain their exempt character after they are deposited into a checking account.  *Daugherty v. Central Trust Co.*, 504 N.E.2d 1100, 1103 (Ohio 1986).  The Ohio statute provided:

---

[4]The *Guidry* court limited its holding to uncommingled funds. *Id*. at 1086 n.10.

9

> Every person who is domiciled in this state may hold
> property exempt from execution, garnishment,
> attachment, or sale to satisfy a judgment or order, as
> follows: . . . personal earnings of the person owed to
> him for services rendered within thirty days before the
> issuing of an attachment or other process, the
> rendition of a judgment, or the making of an order,
> under which the attempt may be made to subject such
> earnings to the payment of a debt, damage, fine, or
> amercement . . . .

OHIO REV. CODE ANN. § 2329.66. The Ohio court concluded that the
broad introductory language "exempt from execution, garnishment,
attachment, or sale" indicated that the Ohio legislature meant
for the exemption to continue after receipt. *Daugherty*, 504
N.E.2d at 1103. The court distinguished the Ohio statute from
the CCPA, with its narrower emphasis on garnishment. *Id*.

These cases point to some clear distinctions. In contrast
to the Ohio statute, § 13:3881's broad introductory statement is
limited by the specific reference to garnishment in the
definition of "disposable earnings." Likewise, the Louisiana
statute differs from the Colorado statute in *Guidry* because it
lacks similar language to Colorado's "compensation paid." And
unlike in *Guidry*, here we have no statement from the state's
highest court compelling a certain interpretation, but only two
conflicting appellate court opinions.

Moreover, the language of other Louisiana statutes provides
a key to interpreting the language here. The disposable earnings
exemption resembles the statute exempting workers' compensation
benefits in that it does not specifically refer to benefits that

10

have been received.  We will follow the Louisiana courts' interpretation of the workers' compensation exemption as not applying to benefits that have been received.  Therefore, consistent with the statute's plain language, we conclude that the disposable earnings exemption does not protect wages once they have been paid.[5]

For these reasons, we conclude that the disposable earnings exemption found in LA. REV. STAT. ANN. § 13:3881(1)(a) does not protect wages once they have been deposited into a bank account, and thus we affirm the judgment of the district court.

AFFIRMED.

---

[5] We also note that Sinclair's position lacks a cut-off point——many of a debtor's assets are ultimately traceable to wages.  *Cf. Kokoszka*, 417 U.S. at 648 (emphasizing that an asset's source in wages does not necessarily provide special treatment).  Sinclair offers no point at which these assets stop being protected.