[Cite as *Estate of Hersh v. Schwartz*, 195 Ohio App.3d 295, 2011-Ohio-3994.]

IN THE COURT OF APPEALS

FIRST APPELLATE DISTRICT OF OHIO

HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| ESTATE OF HERSH, | : | APPEAL NO. C-100664 |
| | | TRIAL NO. EX-100633 |
| Appellee, | : | |
| | | *D E C I S I O N.* |
| v. | : | |
| SCHWARTZ, | : | |
| Appellant. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: August 12, 2011

Joshua L. Goode, for appellee.

Geoffrey P. Damon, for appellant.

FISCHER, Judge.

{¶ 1} Robert Schwartz appeals from a decision of the Hamilton County Court of Common Pleas that ordered the sale of his property to satisfy a judgment obtained by the estate of Beverly Hersh ("the estate"). For the following reasons, we affirm.

{¶ 2} In July 2010, the Hamilton County Probate Court entered judgment against Schwartz for over $300,000. The trial court then issued a writ of execution, and sheriff's deputies later seized several items of personal property belonging to Schwartz. At a hearing the next day, Schwartz argued that some of this property was exempt from execution under R.C. 2329.66. He also told the court that he was unable to litigate the issue in person because he was scheduled to begin a prison term in less than a week. The court advised Schwartz that his attorney could represent him while he was incarcerated and scheduled a hearing on his exemption claims.

{¶ 3} Before the second hearing, the estate moved for an order to sell some of the seized property at a "high end auction of art, antiques, and collectibles." Among the items listed in its motion were several slot machines, various Andy Warhol memorabilia, and celluloids of Looney Tunes and Disney cartoons. Together, this property was purportedly worth $8,270.

{¶ 4} At the second hearing, Schwartz's attorney argued that the items in the estate's motion were exempt from execution under R.C. 2329.66(A)(4)(a) as household goods and household furnishings that Schwartz held primarily for his personal, family, or household use. The court disagreed and ordered the sale of the property. Schwartz now appeals, raising two assignments of error.

{¶ 5} In his first assignment of error, Schwartz argues that the trial court erred in ordering the sale of exempt property. We are not persuaded.

{¶ 6} Under R.C. 2329.66, persons domiciled in Ohio may hold certain property exempt from "execution, garnishment, attachment, or sale to satisfy a judgment or order."[1] This includes any "interest not to exceed [$525] in any

---

[1] R.C. 2329.66(A).

particular item or [$10,775] in aggregate value, in household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, firearms, and hunting and fishing equipment that are held primarily for the personal, family, or household use of the person."[2]  Thus, whether a person may exempt property under this provision depends on the property's value, its type, and why the person holds it.

**{¶ 7}**  Schwartz argues that the trial court ordered the sale of "household goods" and "household furnishings" that he held primarily for his "personal, family, or household use."  The legislature has not defined these terms, and neither the Ohio Supreme Court nor Ohio's courts of appeals have interpreted them in this context.  Therefore, we must construe their meaning as a matter of first impression. Statutory interpretation presents questions of law that we review de novo.[3]

**{¶ 8}**  Although there is no binding precedent, we do not lack guidance. For instance, the United States Bankruptcy Court for the Northern District of Ohio has defined "household goods" under R.C. 2329.66 as " 'items of personal property reasonably necessary for the day to day existence of people in the context of the homes.' "[4]  Applying this test, the court has held that one television and one videocassette recorder are household goods, but that an extra television and a lawn edger are not.[5]

**{¶ 9}**  The United States Bankruptcy Court for the Southern District of Ohio, however, disagreed with this approach when interpreting the nearly identically worded federal exemption statute.[6]  The court opposed any "necessity"

---

[2] R.C. 2329.66(A)(4)(a).
[3] *State v. Consilio*, 114 Ohio St.3d 295, 2007-Ohio-4163, 871 N.E.2d 1167, ¶ 8.
[4] *In re Szydlowski* (Bankr.Ct.N.D. Ohio 1995), 186 B.R. 907, 911, quoting *In re Barnes* (Bankr.Ct.D.Md.1990) 117 B.R. 842, 847.
[5] Id.
[6] *In re Keeton* (Bankr.Ct.S.D. Ohio 1993), 161 B.R. 410; Section 522, Title 11, U.S.Code.

requirement as having no basis in the statute's language. Instead, the court held that " 'household goods' * * * are those items of personal property that are typically found in or around the home and used by the debtor or his dependents to *support and facilitate day-to-day living within the home*, including maintenance and upkeep of the home itself."[7] Under this test, the court determined that a water softener was a household good.

{¶ 10} This "functional nexus" test was first articulated by the Fourth Circuit Court of Appeals in *McGreevy v. ITT Fin. Servs.*[8] The court explained that "the requisite functional nexus exists where—and only where—the good is used to support and facilitate daily life within the house. It is the household good's use *for these* purposes that distinguishes it from a good that is merely located and used within the house. Pots and pans are household goods *because* they are used to support and facilitate daily household living; a model car collection, by contrast, is not a household good because it serves no such purpose."[9]

{¶ 11} We adopt the *McGreevy* approach, which is consistent with the language of R.C. 2329.66 and the statute's underlying purpose "to protect funds intended primarily for maintenance and support of the debtor's family."[10] If the legislature had intended a "reasonably necessary" test, it would have included this language in R.C. 2329.66(A)(4)(a), as it did in the exemption provisions for child support, spousal support, pensions, and annuities.[11] This definition satisfies our duty to read the words and phrases of the Revised Code in context and according to

---

[7] (Emphasis added in *Keeton.*) *Keeton* at 414, quoting *McGreevy v. ITT Fin. Servs.* (C.A.4, 1992), 955 F.2d 957, 961-962.
[8] *McGreevy* at 961.
[9] (Emphasis sic.) Id.
[10] *Daugherty v. Cent. Trust Co.* (1986), 28 Ohio St.3d 441, 445, 504 N.E.2d 1100.
[11] See R.C. 2329.66(A)(1o)(b) and (11).

the rules of grammar and common usage.[12]  And for the sake of consistency, it must apply with equal force to the term "household furnishings."

{¶ 12} Next we must decide what it means to hold property for one's "personal, family, or household use."  In other chapters of the Revised Code, this phrase essentially distinguishes consumer purposes from business purposes.[13]  We find no reason to apply a different meaning here.  We also agree with the *McGreevy* court that this requirement does not "independently ensure the existence of a functional nexus between the good and the household.  This portion of the statute, however, requires only that the good be 'held' for a personal as distinguished from a commercial use, not that it actually be used for such a purpose."[14]

{¶ 13} In this case, Schwartz seeks to protect property that allegedly has sentimental value. But items that have only sentimental value, such as art, do not support and facilitate daily household living.  Thus, this property cannot qualify as either household goods or household furnishings under R.C. 2329.66(A)(4)(a).  Schwartz presented no evidence that any of the items either facilitated daily life in his household or were held for consumer purposes; therefore, he failed to carry his burden of proof.[15]  Accordingly, we overrule his first assignment of error.

{¶ 14} In his second assignment of error, Schwartz argues that he was denied due process of law because the trial court "refused to allow" him to claim his property as exempt.  This argument is without merit.

---

[12] R.C. 1.42.

[13] See, e.g., R.C. 1301.201(B)(11) (defining "consumer" under the Ohio Uniform Commercial Code as "an individual who enters into a transaction primarily for personal, family, or household purposes"); R.C. 1345.01 (defining "consumer transaction" under the Consumer Sales Practices Act as "a sale * * * or other transfer of * * * goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household").  See also *Ford Motor Credit Co. v. Ryan*, 189 Ohio App.3d 560, 2010-Ohio-4601, 939 N.E.2d 891, ¶ 77 ("Purchases of goods for primarily business purposes are not 'consumer transactions,' and thus cannot support a [Consumer Sales Practices Act] claim").

[14] *McGreevy* at fn. 11.

[15] See *Baxter v. Old National-City Bank* (1933), 46 Ohio App. 533, 541-542, 189 N.E. 514.

**{¶ 15}** The United States Constitution and the Ohio Constitution guarantee procedural due process.[16] "Although the concept is flexible, at its core, procedural due process under both the Ohio and United States Constitutions requires, at a minimum, an opportunity to be heard when the state seeks to infringe a protected liberty or property right."[17]

**{¶ 16}** Schwartz personally appeared before the trial court to argue that some of his seized property was exempt from execution under R.C. 2329.66. Although he did not attend a second hearing on the issue, due to his incarceration, this does not mean that he was deprived of due process of law.[18] The court personally notified Schwartz about the second hearing, and there is no indication that Schwartz ever requested to attend.[19] Moreover, his counsel did attend and presented argument. On this record, we cannot say that Schwartz lacked either notice or a meaningful opportunity to be heard. We overrule his second assignment of error.

**{¶ 17}** Therefore, the judgment of the trial court is affirmed.

Judgment affirmed.

DINKELACKER, P.J., and CUNNINGHAM, J., concur.

---

[16] *City of Youngstown v. Traylor*, 123 Ohio St.3d 132, 2009-Ohio-4184, 914 N.E.2d 1026, ¶ 8.
[17] *State v. Cowan*, 103 Ohio St.3d 144, 2004-Ohio-4777, 814 N.E.2d 846, ¶ 8, citing *Boddie v. Connecticut* (1971), 401 U.S. 371, 377, 91 S. Ct. 780.
[18] See *Shepard Grain Co. v. Creager*, 160 Ohio App.3d 377, 2005-Ohio-1717, 827 N.E.2d 392, at ¶ 17 ("[A]n absolute right for an incarcerated party to be present in a civil action does not exist").
[19] Cf. id. at ¶ 17-18 (listing the factors a court should consider when deciding whether to grant a prisoner's request to be present at a civil hearing).