Allen, J.
 

 Three major questions arise in this case. They are as follows:
 

 (1) Can exemptions be waived by executory contract in Ohio?
 

 (2) Is a contract between the lessee and the lessor, charging rent upon the lessee’s personal property on the farm, superior to the lessee’s claim of exemption in lieu of homestead?
 

 (3) Is a contract between lessee and lessor, charging rent upon the lessee’s personal property on the farm, superior to an exemption claim as
 
 *313
 
 serted by tbe wife of tbe debtor, who did not join in the lease?
 

 Subdivision 9 of the lease, under which this case arises, reads as follows:
 

 “That all goods and chattels, or any other property used or kept on said premises, shall be held for the rent or damages under this lease, whether exempt from execution or not, meaning and intending hereby to give the party of the first part a valid and first lien upon any and all goods and chattels, crops and other property belonging to the said party of the second part.”
 

 Plaintiff in error urges that the claim of exemption made by Dean in the bankruptcy case is superior to the claim of Anna McMullen for rent, because subdivision 9 of the lease amounts to a Waiver of the tenant’s right to claim exemption and under the law this waiver is void.
 

 In support of his argument he points to various
 
 nisi prkes
 
 cases which hold that an agreement to waive the benefit of exemption laws is contrary to public policy. These Ohio decisions do embody the general rule upon the subject. As is said in 11 Ruling Case Law, 543, Section 60':
 
 *314
 
 be frustrated if an agreement waiving bis right could be sustained. If effect should be given to such agreements it is likely that they would be generally inserted in obligations for small demands, and in that way the policy of the law would be completely overthrown. Because of a disposition on the part of some to take undue advantage of another’s extremity and because also of the readiness of men, under pressure, to make contracts which may deprive them and their families of articles indispensable to their comfort, the Legislature has most wisely interposed. Some courts, however, have taken a contrary view and sustained such agreements; but there is later authority regretting the adoption of that view. * * *
 
 Carter
 
 v.
 
 Carter,
 
 20 Fla. 558, 51 Am. Rep. 618;
 
 Green
 
 v.
 
 Watson,
 
 75 Ga. 471, 45 Am. Rep. 479;
 
 Recht
 
 v.
 
 Kelly,
 
 82 Ill. 147, 25 Am. Rep. 301;
 
 Doherty
 
 v.
 
 Ramsey,
 
 1 Ind. App. 530, 27 N. E. 879, 50 Am. St. Rep. 223;
 
 Curtis
 
 v.
 
 O’Brien,
 
 20 Iowa, 376, 89 Am. Dec. 543 and note. See, also,
 
 Burke
 
 v.
 
 Finley,
 
 50 Kan. 424, 31 Pac. 1065, 34 Am. St. Rep. 132 and note;
 
 Moxley
 
 v.
 
 Ragan,
 
 10 Bush (Ky.) 156, 19 Am. Rep. 61;
 
 Kneettle
 
 v.
 
 Newcomb,
 
 22 N. Y. 249, 78 Am. Dec. 186 and note;
 
 Mills
 
 v.
 
 Bennett,
 
 94 Tenn. 651, 30 S. W. 748, 45 Am. St. Rep. 763. Notes: 13 L. R. A. 719; 72 Am. Dec. 742
 
 et seq.”
 
 It is to be admitted at the outset that as between Dean himself and Anna McMullen all the equities are in favor of the lessor. Dean made a contract placing a charge upon his personal property, and in this contract he waived his right of exemption. If the exemption right were personal to the debtor, this court might hesitate to hold that the claim of
 
 *315
 
 Dean for exemptions is superior to his own solemn contract deliberately made. However, it is the policy of the law to establish homestead exemptions and exemptions in lieu of homestead, not only for the benefit of the debtor, but for the benefit of his entire family — for the wife and children. The record shows that Dean and his wife had two minor children. The exemption is made for their benefit as well as for that of Dean, and because of this fact the equities between the immediate parties are not conclusive.
 

 
 *313
 
 “The better reasoning and weight of authority support the proposition that a contract made at the time of incurring an indebtedness waiving the debtor’s right to exemptions is contrary to publie policy and invalid. The statutes which allow a debtor, being a householder and having a family for which he provides, to retain, as against the ■legal remedies of his creditors, certain articles of prime necessity, to a limited amount, are based upon views of policy and humanity which would
 

 
 *315
 
 The case of
 
 Frost, Jr.,
 
 v.
 
 Shaw,
 
 3 Ohio St. 270, is sometimes quoted as opposing the doctrine that an executory contract of waiver of exemptions is void. That, however, was a case not of mere written contract, but of chattel mortgage, and therefore has no controlling influence here.
 

 The court holds, therefore, upon the first question, that an executory contract of this nature, to Waive the benefit of homestead exemption laws, is void as against public policy, which demands that; the family of the debtor shall be protected whatever are the equities between the parties, and holds that the contract of waiver contained in this lease is void and of no effect.
 

 Since Dean, then, in spite of having waived his exemptions, can still claim them, we come now to the question whether the agreement which specifically charges Dean’s personal property on the farm with payment of the rent takes precedence of his exemption claim.
 

 In deciding this question we must consider Section 11729, General Code, which reads:
 

 “The following sections of this subdivision of
 
 *316
 
 this chapter shall not extend to a judgment rendered on a mortgage executed by a debtor and his wife, nor to a claim for manual work or labor, less than one hundred dollars, nor to impair the lien by mortgage or otherwise, of the vendor for the purchase money of the premises in question, nor the lien of a mechanic, or other person, under a statute of this state, for materials furnished or labor performed in the erection of the dwelling house thereon, nor for the payment of taxes due thereon. ’ ’
 

 This is a specific enactment of the Legislature protecting certain kinds of claims against exemptions. A mechanic’s lien, the vendor’s lien, the claim for manual labor under $100, the mortgage lien, and the lien of taxes, are made by this statute superior to the exemption claim.
 

 It will hardly he contended that a claim arising under subdivision 9 of the lease, here considered, falls within any class of claims mentioned in Section 11729 except that of mortgage.
 

 But the agreement does not constitute a chattel mortgage. If it did,
 
 Frost, Jr.,
 
 v.
 
 Shaw,
 
 3 Ohio St., 270, would apply. It contains no conveyance to the mortgagee to secure the performance or nonperformance of an act defeasible upon the performance of the conditions of the lease; it is not executed, nor recorded, as required to constitute a valid chattel mortgage. At the very most, subdivision 9 of the lease constitutes an instrument in the nature of mortgage rather than a mortgage itself.
 

 The Legislature specifically enacted legislation excepting certain claims from the operation of the
 

 
 *317
 
 exemption laws, and made those claims superior to the exemption claim. Can we say that the Legislature intended this claim for rent, in addition to the others specified, to be superior to the right of exemption? If we so hold, an agreement not recognized by the Legislature in Section 11729, General Code, has rights equal to claims specifically placed by the Legislature in the class of claims superior to the right of exemption, and also has rights superior to liens not so listed in Section 11729, General Code, such as the warehouseman’s lien or the innkeeper’s lien.
 

 The Legislature particularized various different exemptions, and it also particularized the claims which should be superior to all exemption claims. It did not include in Section 11729 the kind of claim embraced in this lease. No court should enter the legislative field and legislate to add a new species of claim to those under Section 11729 made superior to exemption, and this court will not take that step.
 

 We hold, therefore, that the agreement here created, as it does not fall within Section 11729, is not superior to Dean’s exemption claim.
 

 Moreover, Flossie Dean, the wife of the debtor, files her own claim for exemption in this action and this concludes the matter. She makes this claim in her own right and not for Dean. Presumably also she makes it for the family, for the record shows that Dean and his wife have two minor children. If she may rightfully claim exemptions, and if her husband may not waive that right for her since she in no wise joined in, ratified, nor ac
 
 *318
 
 quiesced in the contract of lease, her claim is superior to. that of the lessor for rent.
 

 The history of the exemption statute throws some light upon the nature of the right possessed
 
 by
 
 Dean and his wife in holding this chattel property exempt from sale, and we shall consider that history briefly at this point.
 

 The original statute providing for homestead exemption (48 O. L., 29), entitled “An act to exempt the homestead of families from forced sale on execution, to pay debts,” was enacted by the Legislature of Ohio on March 23, 1850. Its first six sections related to the general provisions as to homestead exemption; the seventh was the original enactment of present Section 11729, General Code, and read as follows:
 

 “The provisions of this act shall not extend to any judgment or decree rendered on any contract made before the taking effect of this act, or judgment or decree rendered on any note or mortgage, executed by the debtor and his wife, nor any claim for work and labor less than one hundred dollars, nor to impair the lien, by mortgage or otherwise, of the vendor for the purchase money of the homestead in question, nor of any mechanic or other person, under any statute of this state, for materials furnished or labor performed in the erection of the dwelling house thereon, nor from the -payment of taxes due thereon.”
 

 Section 8 was the section out of which Section 11738, General Code, the section under which Dean is claiming in this ease, has grown. It read:
 

 “That it shall be lawful for
 
 any resident of Ohio being the head of a family, and not the owner of
 
 
 *319
 

 a homestead,
 
 to hold exempt from execution or sale, as aforesaid, mechanical tools, or a team and farming utensils, not exceeding three hundred dollars in value, in addition to the amount of chattel property now by law exempted.”
 

 The law was amended March 27, 1858, appearing in 55 Ohio Laws, at page 22, to permit any resident of Ohio who was the head of a family, and not the owner of a homestead, to hold exempt from execution not merely tools used by him in his trade, or a team and farming utensils, but any personal property not exceeding $300 in value.
 

 Other changes were later made, increasing the exemption to $500 and extending it to real property, but those amendments are not pertinent to this discussion and it is unnecessary to recite them in detail.
 

 In 1884, as appears upon page 148 of volume 81 of the Laws of Ohio, an amendment was further enacted giving the right of exemption in lieu of homestead to “husband and wife living together.” As contained in the law of April 12, 1884, the section reads as follows:
 

 “Sec. 5441. Husband and wife living together, a widower living with an unmarried daughter or minor son, every widow and every unmarried female having in good faith the care, maintenance and custody of any minor child or children of a deceased relative, residents of Ohio, and not the owner of a homestead, may, in lieu thereof, hold exempt from levy and sale real or personal property to be selected by such person, his agent or attorney, at any time before sale not exceeding five hundred dollars ($500) in value, in addition
 
 *320
 
 to the amount of chattel property otherwise by law exempted.”
 

 So far as pertinent to this discussion the law of Ohio today is the same as it was in 1884 with regard to allowance in lieu of homestead.
 

 Why did the Legislature change the words “any resident of Ohio being the head of a family” to “husband and wife living together”? Why did it not, if it desired to give this right to the husband alone, use the following phrase: “Every husband who is living with his wife and who is not the owner of a homestead”? These words it did not use, nor any such equivalent. It said, “husband and wife living together” shall have the right to hold chattel property exempt from execution.
 

 This amendment gives the wife a clear right to claim exemptions, a right of which she is not deprived by the-waiver of the husband. The husband is not an agent of the wife unless so constituted by express or by implied authority.
 

 “The husband has no original or inherent power to act as his wife’s agent; his authority arises only from her appointment. * * * In order to bind the wife by the acts of her husband it is essential that she shall have previously authorized him to act as her agent or subsequently, with knowledge of the act, ratified or adopted it.” 30 Corpus Juris, 620.
 

 “Whether the husband was the agent of his wife is a question of fact to be found as any other fact. It is a fact to be proved by evidence, and not to be presumed. * * * There is no presumption of law that the husband has authority to act on behalf of the wife.” 30 Corpus Juris, 621.
 

 
 *321
 
 As the record shows that Dean’s wife joined neither in the lease nor in .the waiver of exemption attempted to be created in the lease, and gives no proof of any acquiescence by her therein, Mrs. Dean’s rights under the letter and spirit of the law remain unaltered by Dean’s contract.
 

 It is in fact the rule that the waiver of the husband does not affect exemptions in which his wife or his family have an interest. 25 Corpus Juris, 119, and eases cited.
 

 A leading case upon this question is the case of
 
 King
 
 v. Moore, 10 Mich., 538. In this case Elizabeth King, the wife of Amos S. King, brought an action of trespass against Moore for the taking of certain corn and potatoes, and com fodder, on an execution against King; the said articles being-claimed as exempt from execution. The cause being removed by appeal to the circuit court, it was admitted by the parties on the trial that King was the owner of four acres of land in the county, upon which he resided with his family, and that all his personal property did not exceed $200 in value; that in May, 1858, he planted about two acres of his land to com and potatoes; that on the 3d day of June, 1858, Moore, as constable, levied upon these crops, which had just vegetated and were visible above ground, and made an indorsement of the levy upon the execution, reciting that they were turned out to him by said Amos; that after this levy the execution was allowed to rest until the com and potatoes were fit for harvest, when Moore sold them upon the execution; and that when the sale was made King had no horse, cow, or other animal, except one pig. The cause being
 
 *322
 
 tried without a jury, the court found that the com and potatoes were planted by King for the use of his family; that there was not enough for the use of the family for six months, and to feed two cows and fatten two swine; and that the family alone would require all the potatoes and 26 bushels of corn for food in six months, the value of which was found to be $19.88. The circuit court held the whole to be exempt, and rendered judgment against Moore for $34.80 and costs. The court held that the action of the wife for exempt property taken on execution cannot be defeated by showing that the property was turned out by the husband for the levy.
 

 The court at page 539 says:
 

 “First. Can the action of the wife, under Sec-, tion 3294 of Compiled Laws, for property taken on execution against the husband, and which was exempt, be defeated by showing that the property was turned out by the husband to be levied upon?
 

 “In answer to this question, we think it clear her action cannot thus be defeated. The exemption is intended quite as much for the benefit of the wife and family, as that of the husband.”
 

 See, also,
 
 Beecher
 
 v.
 
 Baldy,
 
 7 Mich., 488.
 

 The case of
 
 Kennedy
 
 v.
 
 Juhan,
 
 102 Ga., 148, 29 S. E., 188, is likewise in point. This was a case in which a distress warrant in favor of Mrs. Juhan was sued out against Kennedy, and levied upon certain household furniture. Kennedy as trastee for his wife and minor child interposed a claim, alleging that the articles levied on were the property of the wife and child as beneficiaries “under and by virtue of a certain homestead exemption
 
 *323
 
 granted them” by the ordinary of Bibb county. When the case came on to be tried, the claimant, without the knowledge or consent of the beneficiaries, withdrew the claim, and judgment was rendered for costs against him. A levy was made upon personal property in the possession of Kennedy, and thereupon an equitable petition was brought by Mrs. Kennedy, for herself and as next friend of her minor child, praying that the judgment dismissing the claim case be ■ set aside and the claim be reinstated and tried upon its merits.
 

 The court, upon page 150 of 102 Ga. (29 S. E., 189), says:
 

 “The withdrawal of the claim did not and could not constitute a waiver of the homestead right, the head of the family having no authority, either by express stipulation or by implication, to waive the homestead right after the property has been set apart as exempt. The withdrawal of the claim did not, therefore, render the property subject to the execution. ”
 

 The court held, upon page 151 of 102 Ga. (29 S. E., 189):
 

 “Mrs. Kennedy and her child, not being parties to the suit, are not bound in any way, either as beneficiaries of the exemption, or otherwise; and they are not precluded from appealing to the courts to protect their rights in the exempted property from invasion by the plaintiff. Their rights in the exempted property are not by such judgment in any way impaired or affected.
 

 “There was no error in enjoining the execution
 
 *324
 
 from proceeding against the property' claimed as exempt, and in denying the other prayers.”
 

 See, also,
 
 Augustine
 
 v.
 
 Gold,
 
 188 Iowa, 551, 174 N. W., 581, which holds that as the incumbrance of exempt property by the head of a family is under the statute void, where his wife does not join therein, he does not waive the exemption by giving a mortgage thereon, in which the wife does not join.
 

 The court, upon page 557 of 188 Iowa (174 N. W., 588), says:
 

 “The exemption is made for the benefit of the family. It rests in sound public policy. It is made to protect the family against the improvident conduct of the husband.”
 

 It is contended that it would be inequitable not to hold this lien superior to the exemption claim, upon the ground that Mrs. McMullen rented hei farm upon the faith of this very contract in the lease. From the standpoint of the parties alone it is often inequitable to allow an exemption claim. An exemption claim may often prevent creditors from collecting honest debts. But because of the needs of the family of the debtor, not because of his own needs, because of the interest of the state in the family, not in the debtor himself, the exemption laws have been enacted.
 

 If we hold that this agreement is superior to the exemption claim of the family, we run counter to the expressed intention of the Legislature, and we defeat the very purpose of the exemption law, which is that irrespective of the just claims of creditors a family shall retain a certain minimum that cannot be sold for debt in a judicial pro
 
 *325
 
 eeeding. The judgment of the Court of Appeals is reversed.
 

 Judgment reversed.
 

 Marshall, C. J., Wanamaker, Robinson, Jones, Matthias, and Day, JJ., concur.