Marshall, C. J.
 

 The first inquiry must relate to the waiver of the benefit of exemption laws, which waiver was incorporated in the note. It appears that Ethel J. Smith was the owner of the household goods, but she was also one of the signers of the note. This exact question has never before been before this court for consideration. In the case of
 
 Dean
 
 v.
 
 McMullen,
 
 109 Ohio St., 309, 142 N. E., 683, there was a clause in a lease agreeing that goods and chattels on the premises should be held for rent, whether exempt from execution or not. The husband who signed the lease was the owner of the property, but his wife did not join in this clause, and it was held that she was not bound by that waiver nor estopped from making claims for exemption under Section 11738, General Code. While that
 
 *122
 
 case is not parallel in its facts, it is a pertinent authority upon principle.
 

 While the exact question has never been before this court for determination, it has in numerous cases been determined by courts of last resort in other jurisdictions. Almost without exception it has been held that a debtor’s waiver of his exemption right, by stipulation contained in an executory contract, is void as against public policy. This is quite generally placed upon the ground that the purpose of the exemption laws is the protection of the debtor’s family. The rule declaring the waiver to be against public policy, therefore, has peculiar force in all those jurisdictions where the principle of the protection of the family prevails. In
 
 Sears
 
 v.
 
 Hanks,
 
 14 Ohio St., 298, at pages 300 and 301, 84 Am. Dec., 378, this principle was discussed by Scott, J.: “The humane policy of the homestead act * * * seeks not the protection of the debtor; but its object is to protect his
 
 family,
 
 from the inhumanity which would deprive its dependent members of a
 
 home.
 
 Its benefits can only be claimed by
 
 heads of families;
 
 married persons living together as husband and wife; and widowers or widows having an unmarried minor child, or children residing with them as part of their family (sections 1 and 4). And, in aid of this wise and humane policy, the whole act should receive as liberal a construction, as can be fairly given to it. We think its provisions protect the debtor’s family, as against
 
 his creditor,
 
 in the enjoyment of an actual homestead, irrespective of the title or tenure by which it is held.”
 

 The principles declared in the opinion of Judge Scott have never been departed from in this state. Those principles must put the courts of Ohio in the column with practically all the states of the Union in declaring that waivers of the benefits of exemption laws are against public policy and therefore void.
 

 The other question, as to whether money received
 
 *123
 
 from an insurance company in payment of loss of household goods by fire is exempt from execution, must next be considered. This calls for a construction of Sections 11725 and 11738, General Code. Section 11725, in its pertinent parts, is as follows: “Every person who livés with and is the head and sole support of a family, and every widow, may hold property exempt from execution, attachment or sale, for debt, damage, fine or amercement, as follows: * * * live stock or household furnishings not exceeding one hundred and fifty dollars in value to be selected by the debtor.”
 

 Section 11738, in its pertinent parts, provides: “Husband and wife living together, * *
 
 *
 
 resident of this state, and not the owner of a homestead, in lieu thereof, may hold exempt from levy and sale, real or personal property to be selected by such person or his attorney, before sale, not exceeding five hundred dollars in value, in addition to the amount of chattel property otherwise by law exempted.
 
 Such selection a/nd exemption shall not be made by the debtor, or his attorney, or allowed to him from money, salary or wages due to him from any person, partnership or corporation
 
 * * *.”
 

 In Morris Plan Bank of Cleveland
 
 v.
 
 Viona,
 
 122 Ohio St., 28, 170 N. E., 650, this court determined that money voluntarily placed on deposit in a bank by a debtor could not be claimed as exempt. By parity of reasoning it must be held that money due to any debtor, whether a deposit in a bank or not, cannot be claimed as exempt. It does not follow that that rule should apply where, as in the instant case, property which might be claimed as exempt has been converted into money without any voluntary action on the part of the debtor. It would follow from the case of
 
 Morris Plan Bank of Cleveland
 
 v.
 
 Viona
 
 that if a debtor should voluntarily sell his household goods, and place the money on deposit in a bank, he could not claim the money as exempt. The principle of that case more
 
 *124
 
 particularly applies where the relation of debtor and creditor has been created by voluntary contract. In the instant case, the money on deposit with the clerk of the court is the proceeds of loss of household goods by fire. It was not the purpose of the insured to convert his property into money. Insurance protects the owner against loss and is designed to put the owner in position to replace property lost by fire. Ordinarily when buildings are insured against loss by fire,, the insurance company reserves the right to rebuild or repair the building. Whether so expressed in the insurance policy or not, it was no doubt the purpose of the defendants in error in insuring the property to assure themselves of the ability to purchase other household goods, in the event of destruction by fire, in order that, the family relation might continue to be maintained. Household goods, like any other property, receive no added assurance against loss or destruction by the mere fact of being insured. The insurance affects the owner, rather than the goods. It assures to the owner the means of replacement. These observations are made as reflecting upon the question whether the proceeds of a fire insurance policy shall have the same characteristics as the property itself in the interpretation of these statutes.
 

 Another point to be considered is the rule of interpretation of exemption statutes. Upon this question there is some difference in the authorities, though the rule is well-nigh universal that a liberal rule of interpretation should be applied. By “liberal construction” is not meant that words and phrases shall be given an unnatural meaning, or that the meaning shall be enlarged or expanded to meet a particular state of facts. A liberal construction must still be a fair and reasonable one, in an effort always to ascertain'the legislative intent. Among other things, it must be inquired as to the object for which the law is framed; and that construction must be adopted which will pro
 
 *125
 
 mote its purpose. In applying the rule of liberal construction, all reasonable doubts are to be resolved in favor of the statute being applicable to the particular case. Exemption statutes are in derogation of the common rights of creditors, and if no other elements are present such statutes should receive a strict construction. On the other hand, by reason of their being enacted for the public good, to effectuate beneficient purposes, the rule of liberal construction is almost universally held to apply. Numerous decisions of other states, holding the liberal rule applicable, could be cited, but it is not necessary to go beyond our own decisions. In
 
 State, ex rel. Coles,
 
 v.
 
 Shook,
 
 97 Ohio St., 164, 118 N. E., 1010, it is said: “Laws exempting property of a debtor from execution are to be construed liberally in his favor. A statutory provision in the nature of an exception to the general law on the subject of exemptions should be given a strict construction.
 
 ’ ’
 

 The construction of the statutes in question must therefore be approached with the thought in mind: First, that the purpose of the exemption laws is to protect the family against destitution, and that it is for the benefit of children as well as for the parents, in order that the children may be trained and educated to become useful members of society, and may be protected against the dangers to which they would be exposed without those household facilities which make the family relation possible; second, that a liberal rule of construction is to be applied; third, that the money in the hands of the court is not the result of a voluntary contract, but that it stands in place of household goods destroyed by fire, and that other household goods are necessary to the comfort and maintenance of the family.
 

 It has never been decided in this state that the exemption statutes apply to the proceeds of a policy of insurance covering exempt property, but it has been
 
 *126
 
 so decided in numerous cases in other jurisdictions. The contrary has been decided in some of the states, but it is believed that those decisions rest upon the peculiar statutes of those states. In the overwhelming majority of the decisions, it has been held that the exemption should apply to the proceeds of a policy of insurance covering exempt property. It would not be profitable to discuss or even cite the many cases pro and con. They will be found in 11 Ruling Case Law, under the subject “Exemptions,” Section 45; in 25 Corpus Juris, 84; and in a note in 63 A. L. R., 1286.
 

 Upon principle, as well as upon the overwhelming weight of authority, the defendants in error must be held to have the right to claim exemption in the money.
 

 The judgment of the Court of Appeals will be affirmed.
 

 Judgment affirmed.
 

 Jones, Matthias, Day, Alien and Stephenson, JJ., concur.