McFarland, J.
{¶ 1} Bob Bay and Son, Co. (hereinafter "Bob Bay") and Julia Bay, appeal the trial court's grant of partial summary judgment in favor of Appellee, Circle Investment Corp., as well as the trial court's denial of their competing motions for summary judgment. On appeal, Appellants contend that 1) the trial court erred when it granted partial summary judgment to Appellee and denied their summary judgment motions on the issue of whether Appellee had a common law landlord distress lien extending to Bob Bay's personal property; 2) the trial court erred when it granted summary judgment to Appellee and denied their motions for summary judgment because common law landlord distress liens have been abolished in Ohio; 3) the trial court erred when it failed to find that Appellant Julia Bay has a perfected security interest as to Appellant Bob Bay's personal property and sale proceeds thereof; and 4) the trial court erred when it found that Appellee's alleged common law landlord distress lien had priority over Appellant Julia Bay's perfected security interest.
{¶ 2} Because we have found that 1) common law landlord distress liens have been abolished in Ohio; 2) Appellee did not possess a statutory landlord's lien; 3) Appellee did not have a landlord's lien that arose by operation of law; and 4) Appellee did not have a consensual landlord's lien as the lease agreement between Appellant Bob Bay and Circle Investment Corporation expressly provided that the personal property and fixtures should remain the property of the tenants; and 5) Appellee did not enter into a separate security agreement with Appellant Bob Bay regarding its personal property, Appellants' first and second assignments of error have *270 merit and are sustained. However, because we find that Appellants' third and fourth assignments of error are not ripe for review, in light of the fact that it appears from the record before us that the trial court failed to determine whether or not Appellant Julia Bay had a valid and perfected security interest in Appellant Bob Bay's personal property, and whether she was, in fact, next in line in terms of priority. Thus, we must remand this matter for further proceedings. Accordingly, the trial court's grant of partial summary judgment in favor of Appellee as to the issue of whether it had a perfected common law landlord's distress lien and denial of summary judgment as to Appellants on the same issue are reversed, and this matter is remanded to the trial court for further proceedings consistent with this opinion.
FACTS
{¶ 3} The following facts are taken from the affidavits of the parties attached in support of each party's motion for summary judgment, as well as the trial court's decision and entry granting summary judgment in favor of Appellee and denying Appellants' competing motions for summary judgment. The parties herein are in agreement as to the facts of this case and simply disagree on a question of law. Appellant, Bob Bay, operated a grocery store, doing business under the name Carnival Market, located at 120 Morris Road in Circleville, Ohio. Appellee, Circle Investment Corporation, was the owner of the premises and leased the premises to Appellant, Bob Bay. The original lease of this premises was between Appellee and Big Bear and originated on March 17, 1987. On December 21, 2003, Penn Traffic Company, which operated Big Bear, assigned its interest in the lease to Appellant, Bob Bay, pursuant to an assignment and assumption of lease agreement. Appellant, Bob Bay, at that point became the lessee of the premises subject to the terms of the original lease. The pertinent provisions of the lease will be discussed below.
{¶ 4} On December 31, 2014, Appellant, Bob Bay, entered into a security agreement with Appellant, Julia Bay, which granted a security interest in all corporate assets of the business.[2] On that same date, Bob Bay signed a revolving credit promissory note agreeing to pay Julia Bay the amount of $1,194,405.00 pursuant to loans made by Julia Bay to the corporation. Julia Bay thereafter filed a financing statement with the Ohio Secretary of State on March 30, 2016.[3]
{¶ 5} In November of 2016, Bob Bay informed Appellee during a telephone conversation that the premises would be vacated between December 15, 2016 and December 30, 2016, as the grocery store had become unprofitable and ceased its day to day operations. It also appears that the rent was current up until November 1, 2016, but was not paid for the month of November. Appellee thereafter changed locks on the building, which led Appellant, Bob Bay, to file a lawsuit against Appellee alleging breach of lease, interference with its contractual relationship with the liquidation company, seeking a permanent injunction to prevent obstruction of the sale of its personal property and equipment it *271 intended to liquidate, and for punitive damages. Then, on December 1, 2016, Appellee signed a notice of distress lien as to Bob Bay's removable personal property, claiming it had a perfected distress lien for all unpaid rents upon the chattels owned by Bob Bay, and upon the proceeds, if sold. On that same day Appellee filed a counterclaim for breach of lease, seeking to recover rental payments and real estate taxes due and to foreclose upon its distress lien, as well as a third party complaint against Appellant, Julia Bay, who claimed to hold a perfected security interest over the personal property.
{¶ 6} The trial court held a hearing on December 6, 2016, and then issued a decision granting Appellee a distress lien upon Appellant Bob Bay's chattels and proceeds of the sale thereof. In that decision, the trial court found that Appellee likely had a perfected distress lien, that the priority of sale proceeds was in dispute, and noted that Appellee had agreed to allow the scheduled liquidation sale to occur and that Appellant, Bob Bay, agreed to deposit the net proceeds of the sale to be held in escrow by the Clerk of Courts until the issue was decided. Appellants subsequently filed a motion to vacate the decision finding Appellee had a distress lien, arguing that distress liens of personal property were no longer recognized in Ohio and had been abolished. It was further argued that liens upon personal property were now governed by R.C. Chapter 1309, which consists of Ohio's adoption of the Uniform Commercial Code. Appellee filed a memorandum contra Appellants' motion to vacate arguing R.C. Chapter 1309 did not apply to landlord's liens. After additional motion practice, the trial court issued a decision and entry on January 19, 2017, denying Appellants' motion to vacate.
{¶ 7} Thereafter, all parties filed motions for summary judgment. Appellee's motion for summary judgment requested judgment in its favor in the amount of $2,141,913.28 for breach of the lease and for a declaration that it had a valid commercial rent distress lien and first priority against the proceeds of the liquidation sale in the amount of $55,922.32. Appellant, Bob Bay, filed a motion for partial summary judgment seeking a determination that distress liens have been abolished in Ohio. Finally, on July 17, 2017, Appellant, Julia Bay, filed a motion for summary judgment, seeking an order that she had a perfected security interest in the proceeds of the sale of the personal property, that Appellee did not possess a distress lien, and that her perfected security interest had priority over the alleged distress lien.
{¶ 8} The trial court issued a decision on August 4, 2017, granting Appellee's motion for summary judgment, in part, on the issue of the distress lien, finding that common law landlord distress liens had not been abolished in Ohio. The trial court stated it would not award damages for lost rents and Appellee must file another action if it sought such an award. The trial court further denied Appellants' competing motions for summary judgment and dismissed any other remaining claims. It is from this decision and entry that Appellants now bring their timely appeal, setting forth four assignments of error for our review.
ASSIGNMENTS OF ERROR
I. THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT TO THE APPELLEE AND DENIED THE SUMMARY JUDGMENT MOTIONS OF APPELLANTS ON THE ISSUE OF WHETHER THE APPELLEE HAD A LANDLORD DISTRESS LIEN.
*272 II. THE TRIAL COURT ERRED WHEN IT GRANTED SUMMARY JUDGMENT TO THE APPELLEE AND DENIED THE SUMMARY JUDGMENT MOTIONS OF APPELLANTS BECAUSE LANDLORD DISTRESS LIENS HAVE BEEN ABOLISHED IN OHIO.
III. THE TRIAL COURT ERRED WHEN IT FAILED TO FIND THAT THE THIRD-PARTY DEFENDANT JULIA BAY HAS A PERFECTED SECURITY INTEREST IN THE PLAINTIFF'S PERSONAL PROPERTY AND THE SALE PROCEEDS THEREOF.
IV. THE TRIAL COURT ERRED WHEN IT FOUND THAT APPELLEE'S ALLEGED LANDLORD DISTRESS LIEN HAD PRIORITY OF APPELLANT'S THIRD-PARTY DEFENDANT JULIA BAY'S PERFECTED SECURITY INTEREST."
Standard of Review
{¶ 9} When reviewing a trial court's summary judgment decision, appellate courts conduct a de novo review under the standard set forth in Civ.R. 56. Comer v. Risko , 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Summary judgment is appropriate when the movant has established (1) that there is no genuine issue of material fact, (2) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the nonmoving party, with the evidence against that party being construed most strongly in its favor, and (3) that the moving party is entitled to judgment as a matter of law. Bostic v. Connor , 37 Ohio St.3d 144, 146, 524 N.E.2d 881 (1988) ; citing Harless v. Willis Day Warehousing Co., 54 Ohio St.2d 64, 66, 375 N.E.2d 46 (1978) ; see also Civ.R. 56(C).
{¶ 10} The burden to show that no genuine issue of material fact exists falls upon the party who requests summary judgment. Dresher v. Burt , 75 Ohio St.3d 280, 294, 662 N.E.2d 264 (1996). To satisfy its burden, the moving party must refer to "the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action," that affirmatively demonstrate that the nonmoving party has no evidence to support the nonmoving party's claims. Civ.R. 56(C) ; see also Hansen v. Wal-Mart Stores, Inc. , 4th Dist. Ross No. 07CA2990, 2008-Ohio-2477, 2008 WL 2152000, ¶ 8. After the movant supports the motion with appropriate evidentiary materials, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E). "If the party does not so respond, summary judgment, if appropriate, shall be entered against the party." Id.
{¶ 11} In the case sub judice, the materials the trial court considered consisted of the pleadings, affidavits by the parties, and copies of the original lease agreement and assignment and assumption of lease agreement regarding the subject property. Also appearing in the record are copies of the security agreement signed between "Bob Bay and Son Co." and Julia Kathy Bay, a revolving credit promissory note between "Bob Bay and Son, Inc." and Kathy Bay, a revolving line of credit agreement between "Bob Bay and Son, Inc." and Kathy Bay, *273 and an initial filing statement filed by Julia Kathy Bay as to "Bob Bay and Son Co."
ASSIGNMENTS OF ERROR I AND II
{¶ 12} We address Appellants' first and second assignments of error together as they both challenge the trial court's rulings on the competing motions for summary judgment filed below. Appellants contend under these assignments of error that the trial court erred when it granted partial summary judgment to Appellee and denied the summary judgment motions of Appellants on the issue of whether Appellee had a common law landlord distress lien, because common law landlord distress liens have been abolished in Ohio. Appellants further contend that the type of interest Appellee seeks to secure in Appellant Bob Bay's personal property is governed by R.C. Chapter 1309, which controls secured transactions and adopts the Uniform Commercial Code (UCC). Appellee contends that common law landlord distress liens have not been abolished, but instead are alive and well in Ohio, and that R.C. Chapter 1309 does not apply to the facts of this case.
{¶ 13} Both parties are in agreement as to facts of the present case, but disagree on the law relative to this issue. The legal question presented here is whether the remedy of common law landlord distress, which allows the landlord to re-possess the real property at issue and also take any and all personal property found on the premises of the tenant, is still permissible; or whether Ohio's adoption of the Uniform Commercial Code as set forth in R.C. Chapter 1309 now governs such interests in a tenant's personal property. Based upon the following, we agree with Appellants' argument that common law landlord distress liens are no longer recognized in Ohio.
Common law
{¶ 14} Appellee is correct that the common law, at one time, provided for landlord distress liens and the State of Ohio appears to have recognized them at some point.[4] "At common law, distress was a remedy for the collection of rent and the right to this remedy was incident to rent. Broadly defined, common-law distress allows the landlord to go upon the demised premises and seize anything that he or she might find there, as security for rent in arrears, and to hold it without sale until the rent is paid." 65 Ohio Jur. 3d Landlord and Tenant § 317 ; citing Sutliff v. Atwood , 15 Ohio St. 186, 1864 WL 24 (1864) and Am Jur. 2d, Landlord and Tenant § 813 (emphasis added).
{¶ 15} Similarly, in § 6:14 Distress for rent, Oh. Landlord Tenant L. (2017-2018 Ed.) it is explained that:
"Distress for rent was a common-law remedy that allowed the landlord to go onto the leased premises, seize anything he could find there, and use it as security for rent held in arrears, such holding to be without sale and only until the rent was paid. The right to the remedy of distress at common law was incident to the rent. Although there are no direct holdings on the question, the remedy of distress has been abolished in Ohio." (emphasis added).
However, as also noted in 65 Ohio Jur. 3d Landlord and Tenant § 315"At common law, a landlord has no lien upon the personal property of his or her tenant merely by reason of the landlord-and-tenant relationship. The landlord may, however, reserve *274 a lien in his or her favor upon the personal property of the lessee, and it is common for such a provision to be included in a lease agreement." Citing Am. Jur. 2d, Landlord and Tenant § 790 ; Dean v. McMullen , 109 Ohio St. 309, 142 N.E. 683 (1924) ; and Metcalfe v. Fosdick , 23 Ohio St. 114, 1872 WL 55 (1872).
{¶ 16} The Supreme Court of Ohio, in Sutliff v. Atwood, supra, at 193-194, stated as far back as 1864, that "[d]istress was a remedy, it is true, incident to rent, at common law, for its collection; but, the abolition of this remedy did not destroy the other legal qualities of rent." (emphasis added). Sutliff involved the commercial lease of a dairy farm along with its cows, and the cows, it appears, were the personal property of the lessor. Id. at 192. Appellee argues that the statement regarding distress in Sutliff was merely dicta and should not be considered controlling by this Court or be construed to abolish distraint[5] and distress. This Court reasoned as follows regarding the role of dicta and the reliance thereon in State v. Boggs , 89 Ohio App.3d 206, 213, 624 N.E.2d 204 (1993), when presented with an argument that analysis rendered by the court but not carried into the syllabus was dicta and therefore not binding:
"Be that as it may, the reality of appellate practice is that this court, and others, frequently rely on Supreme Court dicta for resolution of issues. Any court which disregards the Supreme Court's discussion of certain issues merely on the basis that it was not carried into the syllabus would be treading on dangerous and unstable ground. A healthy regard should be maintained for considered dicta . Dedham Water Co. v. Cumberland Farms Dairy, Inc. (C.A.1, 1992), 972 F.2d 453, 459 ; McCoy v. Massachusetts Inst. of Technology (C.A.1, 1991), 950 F.2d 13, 19."
{¶ 17} Thus, although we acknowledge the statement in Sutliff may be considered dicta and is therefore not controlling, we nevertheless find it persuasive and instructive on the issue before us, especially in light of the general lack of case law on this particular topic. Aside from this statement in Sutliff , this Court has been unable to locate a single case, going back over one hundred years, which even mentions common law landlord distress liens, with the exception of the case of Stephenson v. Haines , 16 Ohio St. 478, 1866 WL 10 (1866).
{¶ 18} Stephenson involved the lease and/or conveyance of a house that contained a right-of-re-entry provision which permitted the lessor to repossess the property, along with all the appurtenances, and avoid the conveyance upon default of payment. Id. After the lessee defaulted and lessor brought suit, the Court was presented with the question of "whether the parties to whom the rents were payable, had a lien therefore upon the premises, superior to the lien of the mortgagees". Id. at 479. The court held that "a lien for the rent always exists where the lease provides for a right of re-entry -- that is, the right, upon non-payment of rent, to avoid the lease and repossess the premises demised." Id. at 486. Noting that the instrument at issue was not a lease but rather "a deed of conveyance in fee, subject to a condition of defeasance[,]" the court reasoned that lessor had a two-fold lien; the equitable lien for the purchase money, and *275 the lien by virtue of the reservation in the deed. Id.
{¶ 19} The court ultimately affirmed the lower court's determination that the lessor's lien upon the premises was superior to the lien of the mortgagees. Id. at 487. Thus, the Stephenson court recognized that a lessor's, or landlord's, lien has priority over a competing mortgagee where the instrument of conveyance provides for the lessor's or landlord's right of re-entry upon non-payment of rent. Stephenson , however, did not address the issue of whether a right-of-re-entry provision in a lease gives a lessor a lien on a lessee's personal property found on the demised premises.
{¶ 20} Although our research failed to yield examples of courts acknowledging and affirming common law landlord distress liens that extend beyond real property to the reach of the personal property of tenants, it did yield several examples of courts determining landlords had valid liens on the personal property of tenants where the lease contained a right-of-re-entry provision that expressly covered personal property. See Shoenberger v. Mount , 12 Ohio Dec. Reprint 292, 1855 WL 3200 (1855) (holding landlord lien has priority over mortgagee where a lien for the rent was reserved in the lease on chattel property); Metcalfe v. Fosdick , 23 Ohio St. 114, 1872 WL 55 (1872) (a lessor's expressly reserved lien on moveable machinery of a factory is superior to lessee's attaching creditors, and such lien is not a chattel mortgage and need not be recorded to be effective against third persons); Winslow v. Hart , 4 Ohio Dec. Reprint 567, 1879 WL 5020 (1879) (lessor's right is superior to holder of chattel mortgage where lease specifies personal property and fixtures shall not be removed until the end of the term and all rents are paid); But see Frigidaire Sales Corp. v. Katz , 29 Ohio N.P. (N.S.) 595, 1931 WL 2253 (1931) (differentiating between personal property and fixtures and determining that chattel mortgagee had priority over lessor as to personal property).
{¶ 21} We find the lack of case law on this issue, coupled with the Supreme Court of Ohio's comment, albeit dicta, in Sutliff , as well as the foregoing cited case law (which only analyzes lessor's or landlord's claimed liens on personal property of a tenant in the context of a lease agreement that provides for a right of re-entry, with concomitant right to repossess the real and personal property upon default of rent), satisfies us that common law landlord distress liens are no longer recognized in Ohio. We believe such finding is bolstered by more recent cases which discuss modern landlord liens as being either consensual, statutory or arising by operation of law, and falling within the gambit of R.C. Chapter 1309, as opposed to existing at common law. Walcher Grain Co. v. Slane , 6th Dist. Huron No. H-86-3, 1987 WL 8015, *1 (Mar. 20, 1987) ; see also Craig Wrecking Co. v. S.G. Loewendick & Sons, Inc. , 38 Ohio App.3d 79, 526 N.E.2d 321 (1987) (holding that "absent breach of the peace and pursuant to a valid lease provision, a commercial lessor may resort to self-help repossession upon default by the tenant[ ]" however "liability may arise for injury to * * * personal property resulting from the repossession."); Northfield Park Associates v. Northeast Ohio Harness , 36 Ohio App.3d 14, 521 N.E.2d 466 (1987) (finding commercial lease self-help provision permitting lessor to enter and take possession of the premises [not personal property] was not against public policy, and noting self-help was no longer permitted in residential leases)[6] ;
*276 Cozmyk Enterprises, Inc. v. Hoy , 10th Dist. Franklin No. 96APE10-1380, 1997 WL 358816, *7 (1997) (finding in favor of commercial lessee on conversion claim where lessor denied lessee access to its personal property by changing locks); Persky, Shapiro, Salim, Esper, Arnoff & Nolfi Co., L.P.A. v. Guyuron, M.D. , 8th Dist. Cuyahoga No. 77249, 2000 WL 1867407 (finding that a consensual landlord's lien provision in lease extending to personal property was governed by Chapter 1309 and must be perfected in accordance with that chapter and failure to do so results in third-party's perfected security interest taking priority over the landlord's unperfected interest). R.C. Chapter 1309 (Article 9 of the Uniform Commercial Code)
{¶ 22} In Walcher Grain Co. v. Slane, supra, at *1 (Mar. 20, 1987), the Sixth District Court of Appeals considered a commercial lease involving agricultural property and an asserted landlord's lien on the tenant's crops. Although agricultural leases are dealt with separately in R.C. Chapter 1309, we find the reasoning regarding landlord's liens in general in Walcher is still applicable and instructive. The Walcher court explained that "[t]here are three types of landlord's liens: statutory landlord's liens, other landlord's liens arising by operation of law, and consensual landlord's liens." Id. Although the court stated that statutory landlord's liens and other landlord's liens arising by operation of law do not fall within the scope of the U.C.C. Article 9 coverage, as adopted in Chapter 1309 of the Ohio Revised Code, it determined that " Section 1309.01 to 1309.50 of the Revised Code [did] apply to consensual landlord's liens." Id.[7]
{¶ 23} In Walcher , the court ultimately held that "[a] landlord's lien of a tenant's crops does not arise by operation of law where the landlord-tenant agreement provides for cash-rent only." Walcher explained that "[c]onsensual landlord's lien arise where, for instance, a lease of the premises gives the landlord a lien to secure rent payments on goods owned by the tenant on the premises." Id. The Walcher court found that 1) no landlord's lien of any kind existed between the parties at issue as there is no statutory lien in Ohio governing a landlord's interest in his tenant's crops where the lease provides for cash-rent only; 2) no landlord's lien had arisen by operation of law; and 3) and no consensual landlord's lien had been created because "the landlord did not reserve any rights to or interest in the crops upon non-payment of rent[,]" and had not created a security interest pursuant to Chapter 1309. Id. at *2.
{¶ 24} Like Walcher , the lease at issue herein provides for cash-rent only by granting the lessor the right to re-enter and repossess the demised premises, to re-lease it to a third party, and to bring an action if necessary, to recoup the rent owed by lessee, Bob Bay. Thus, we cannot find that a landlord's lien arises by operation of law here. Further, this Court has been unable to confirm the existence of a statutory landlord's lien in Ohio despite exhaustive research. Thus, we conclude that there is no statutory landlord's lien at *277 play here. Additionally, a review of the pertinent lease language indicates that there was never a consensual landlord's lien granted over Appellant Bob Bay's personal property in favor of Appellee according to the lease.
{¶ 25} Here, both parties contend that Article 24 of the lease is pertinent to our analysis. Article 24 of the lease is entitled "LESSEE'S DEFAULT" and it provides as follows in the event lessee defaults on payment of the rent:
"* * * Lessor may, at any time after such default, re-enter and take possession of the Demised Primises [sic] without such re-entry working a forfeiture of the rents to be paid and the covenants, agreements, and conditions to be kept and performed by Lessee for the full term of this Lease and, in such event, Lessor shall have the right to relet the same for such periods of time and at such rentals and for such use and upon such covenants and conditions as Lessor may elect, applying the net rentals from such letting first to the payment of Lessor's expenses incurred in re-entering and re-letting said premises and the balance, if any, shall be applied by Lessor on account of the payments due or payable by Lessee hereunder, with the right reserved to Lessor to bring such action or proceeding for the recovery of any deficits remaining unpaid * * *."
Appellee contends that the express right-of-re-entry contained in the lease that allows it to take possession of the demised premises extends to the tenant's personal property. Appellants contend that it does not. We agree with Appellants.
{¶ 26} We conclude, according to the plain language of the lease and in accordance with Stephenson v. Haines , as discussed above, that the right-of-re-entry absolutely gave Appellee the right to enter and take possession of the real property. We further conclude that the plain language of the lease limits Appellee's remedy, upon default in the payment of rent, to re-leasing the property to a third party and applying those proceeds to the amount due from the lessee, along with the right to file an action for the deficit that remained unpaid, much like in Walcher . Unlike the cases cited above, there is no express provision in this lease granting Appellee an interest in Appellant Bob Bay's personal property.
{¶ 27} Further, other sections of the lease expressly state that the personal property and fixtures of Bob Bay, as the lessee, shall remain the property of the lessee. For instance, Article 12 of the lease entitled "Fixtures and Personal Property" provides as follows:
"Any trade fixtures, equipment, and other property installed in or attached to the Demised Premises by and at the expense of the Lessee (including signs) shall remain the property of the Lessee, and Lessee shall have the right at any time , and from time to time, to remove any and all such property. Any material damage to the building caused by removal shall be promptly repaired by the Lessee so that the premises will be left in good order and repair." (emphasis added)
{¶ 28} Additionally, Article 14 of the lease entitled "Assigning and Subletting and Vacancy" provides that lessee has the right "to leave the Demised Premises vacant or unoccupied" and that if such event occurs lessor shall have the right to cancel or terminate the lease. Notice of Bob Bay's intent to vacate the premises was actually the event that triggered Appellee's subsequent conduct of changing the locks, etc. Article 14 further provides, in pertinent part, as follows:
"Upon any such cancellation Lessee shall remove its trade fixtures and *278 equipment, furniture, merchandise and other personal property from the Demised Premises not later than thirty (30) days after Lessor's notice of cancellation.
Thus, contrary to Appellee's suggestion that the right-of-re-entry provision in the lease grants Appellee the right to repossess not only the real property but also the personal property of Appellant, the express language in the lease provides that all personal property and fixtures shall at all times remain the property of the lessee, who has the right to remove them at any time, even if lessor cancels the lease due to lessee's notice that it intends to vacate. This is the exact scenario that occurred in the present case. Clearly, according to the plain language of the lease at issue, no consensual landlord's lien was created here.
{¶ 29} The parties disagree on the issue of whether R.C. 1309.109 applies to landlord's liens, in general. Appellants argue that it does while Appellee argues that it does not. As discussed above, the Walcher court held that consensual landlord's liens fell within the parameters of R.C. 1309.109 to the extent they purport to claim an interest in a lessee or tenant's personal property, as opposed to real property (which does not fall within the coverage of the UCC). In reaching its decision the Walcher court reasoned as follows:
"Chapter 1309 of the Revised Code governs the creation and perfection of security interest in goods. U.C.C. Article 9 as adopted and codified in Chapter 1309 applies to consensual security interests as well as to certain sales. See R.C. 1309.02. However, the uniform model version, U.C.C. § 9-104(b) and most state adaptations, specifically provide that Article 9 does not apply to a landlord's lien. The Ohio legislature, however, has chosen to omit 'landlord's lien' from the exclusions listed in Ohio's version of U.C.C. 9-104. In other words, landlord's liens are not explicitly excluded from Article 9 coverage in Ohio.
Based upon this glaring omission, it would appear as if all landlord's liens must comply with Chapter 1309. This is not the case. Instead, the omission apparently was made out of a belief that to exclude landlord's liens would merely reiterate the limitations on coverage already made explicit in R.C. 1309.02 ( U.C.C.9-102 ). See R.C. 1309.04, Comment 2. Specifically, statutory landlord's liens and other landlord's liens arising by operation of law are already excluded from Chapter 1309 coverage since they are not transactions intended to create a security interest.[8] Furthermore, no special provision exists in Chapter 1309 for statutory landlord's liens or other landlord's liens arising by operation of law (compare: Mechanic's liens). See 8 Anderson, U.C.C., (1985) 540, Landlord's Lien, Section 9-104 : 17. Based on the foregoing, we conclude that although Ohio has omitted 'landlord's lien,' from the exclusions listed in R.C. 1309.04, statutory landlord's liens and other landlord's liens arising by operation of law do not fall within the scope of U.C.C. Article 9 coverage as adopted in Chapter 1309 of the Revised Code. Accordingly, priorities between statutory landlord's liens/landlord's liens arising by operation of law and security interests perfected under Chapter 1309 are to be determined by pre-U.C.C. law.
Conversely, consensual landlord's liens are not excluded from Chapter 1309 coverage. R.C. 1309.02(C) specifically provides:
*279 'The application of sections 1309.01 to 1309.50 of the Revised Code to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which sections 1309.01 to 1309.50 of the Revised Code do not apply.' See Comment 4.
In other words, when a landlord's lien is created by agreement, Chapter 1309 applies to the security interest created even though it does not apply to the subject of the security interest. Therefore, section 1309.01 to 1309.50 of the Revised Code apply to consensual landlord's liens. Consensual landlord's liens must be perfected pursuant to Chapter 1309 which in turn governs any priority dispute between consensual landlord's liens and other security interests."
{¶ 30} The Walcher decision was issued in 1987 and landlord's liens were not excluded from the operation of Chapter 13 of the Revised Code at that time. However, based upon our research, it appears that R.C. 1309.109 was amended to exclude landlord's liens in 2001. For instance, R.C. 1309.109 now provides in section (D) that the chapter does not apply to "[a] landlord's lien, other than an agricultural lien[.]" Importantly, however, the language in R.C. 1309.109 relied upon by the Walcher court which led it conclude that consensual landlord's liens, as opposed to other types of landlord's liens, fell within the parameters of Chapter 1309 still exists in the current version of the statute. More specifically, R.C. 1309.109 currently provides as follows:
"(B) The application of this chapter to a security interest in a secured obligation is not affected by the fact that the obligation is itself secured by a transaction or interest to which this chapter does not apply."
R.C. 1309.109 (D)(11) further currently provides that:
"(D) This chapter does not apply to the following:
* * *
(11) The creation or transfer of an interest in or lien on real property, including a lease or rents under a lease, except to the extent that provision is made for:
* * *
(b) Fixtures in section 1309.334 of the Revised Code ;[9]
* * *
(d) Security agreements covering personal and real property in section 1309.604 of the Revised Code."[10] " (emphasis added)
{¶ 31} We interpret these provisions to mean that even though a lease agreement primarily covers obligations and interests in real property, which are excluded from Chapter 1309, to the extent a lease also purports to grant a lien or security interest in personal property, it is governed by Chapter 1309. Thus, it appears that even though landlord's liens are now excluded from Chapter 1309, there seems to be an exception to that exclusion to the extent a lease grants a consensual landlord's lien in personal property in addition to an interest in real property. Such a consensual lien would, in effect, create a security interest that is governed by Chapter 1309. Because the lease at issue here contains no language that could be construed to create a security interest in Bob Bay's personal property, and because it does not appear that the parties entered into any type of security agreement to evidence Appellee's *280 interest in its lessee's personal property, we find Appellees have no valid lien or secured interest in said personal property.
Conclusion
{¶ 32} We have determined that common law landlord distress liens no longer exist in Ohio. We have further determined that 1) Appellee did not have a statutory landlord's lien; 2) Appellee did not have a landlord's lien that arose by operation of law; and 3) Appellee did not enter into any type of security agreement with Appellant Bob Bay, as provided for in R.C. Chapter 1309, with regard to its personal property. These findings combined with the lease provisions which expressly state, in more than one section, that the personal property of Bob Bay, as tenant, shall remain its property and may be removed at any time, leads us to the conclusion that Appellee has no lien or perfected security interest in the personal property at issue, nor the proceeds of the sale thereof. Therefore, we find that the trial court erred in granting partial summary judgment to Appellee on this issue, and in denying summary judgment to Appellants on this issue. Accordingly, Appellants' first and second assignments of error are sustained and the trial court's judgment granting partial summary judgment in favor of Appellees and denying summary judgment in favor of Appellants on this issue is reversed.
ASSIGNMENTS OF ERROR III AND IV
{¶ 33} In their third and fourth assignments of error, Appellants contend that the trial court erred when it failed to find that Julia Bay had a perfected security interest in Bob Bay's personal property and the sale proceeds thereof, and that it also erred in finding Appellee's alleged common law landlord distress lien had priority over Julia Bay's perfected security interest. After a thorough review of the record and the trial court's decisions and judgments issued in this case, it does not appear that the trial court ever actually analyzed Appellant Julia Bay's claim that she had a valid security interest that had been properly perfected. Throughout the proceedings, the trial court acknowledged her competing claim, but it never actually determined that her claimed security interest was valid or that it had been properly perfected. The trial court further failed to make a determination that Julia Bay stood next in line to Appellee in terms of priority. Instead, it appears that once the trial court determined Appellee had a valid common law landlord distress lien it, summarily dismissed Appellants' competing motions for summary judgment.
{¶ 34} To the extent Appellants are asking this Court to make a finding that Julia Bay's claimed security interest was valid and properly perfected, and that she is thus entitled to the proceeds of the sale of Bob Bay's personal property, we must refrain. Such an initial determination must be made by the trial court. This Court does not decide questions and issues that were not first determined by the trial court. Kearns v. Meigs County Emergency Medical Services , 2017-Ohio-1354, 88 N.E.3d 438, ¶ 23 ; citing Sickles v. Jackson Cty. Hwy. Dept. , 196 Ohio App.3d 703, 2011-Ohio-6102, 965 N.E.2d 330, ¶ 31 (4th Dist.) ; citing Stratford v. Chase Apts. v. Columbus , 137 Ohio App.3d 29, 33, 738 N.E.2d 20 (10th Dist. 2000) (explaining that the appellate court's independent review of a summary judgment decision should not replace the trial court's function of initially determining the appropriateness of summary judgment).
{¶ 35} As such, we find the arguments raised under Appellants' third and fourth assignments of error are not ripe for review, and this matter must be remanded for further proceedings consistent with *281 this opinion. And, we further reverse the trial court's partial grant of summary judgment to Appellee on whether it had perfected a common law distress lien. Accordingly, we reverse and remand this matter to the trial court for further proceedings consistent with this opinion.
JUDGMENT REVERSED AND REMANDED.
Abele, J.: Concurs in Judgment and Opinion.
Hoover, P.J.: Concurs in Judgment Only.

The security agreement granted a security interest in all of Bob Bay's computers, deposit and investment accounts, inventory and all other assets.

The financing statement listed as collateral Bob Bay's merchandise, supplies, inventory, goods, fixtures, machinery, and equipment located at 120 Morris Road, Circleville, Ohio, as well as other locations owned by Bob Bay.

Black's Law Dictionary (10th Ed. 2014) defines "distress" as "[t]he seizure of another's property to secure the performance of a duty, such as the payment of overdue rent."

Black's Law Dictionary (10th Ed. 2014) defines "distrain" as "1. To force (a person, usu. a tenant), by the seizure and detention of personal property, to perform an obligation (such as paying overdue rent). 2. To seize (goods) by distress, a legal remedy entitling the rightful owner to recover property wrongfully taken."

In reaching its decision the Northfield court noted that R.C. 5321.15 was enacted in 1974 and prohibited landlord self-help remedies as to residential tenants. The court also noted the fact that the statute did not include commercial landlords. We further note that this is still the state of the law today, with respect to a commercial landlord's right to re-enter and take possession of the premises, or real property, pursuant to a lease provision.

At the time the Walcher decision was issued, it appears "landlord's liens" were not excluded from R.C. Chapter 1309. However, since that time, R.C. 1309.109 has been amended to exclude landlord's liens. Further discussion regarding exceptions to this exclusion will follow.

R.C. 1309.02 has since been repealed.

R.C. 1309.334 governs priority of security interests in fixtures.

R.C. 1309.604 governs the procedure if a security agreement covers real property or fixtures.